The STATE of Ohio, Appellee,

v.

BRANHAM, Appellant.

[Cite as *State v. Branham* (1995), 104 Ohio App. 3d 355.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA94–03–075.

Decided June 5, 1995.

356

*John F. Holcomb,* Butler County Prosecuting Attorney, *Daniel G. Eichel* and *John M. Holcomb,* Assistant Prosecuting Attorneys, for appellee.

*T. Randall Turner,* for appellant.

WALSH, Presiding Judge.

Defendant-appellant, Ronald Branham, appeals his conviction for aggravated murder in violation of R.C. 2903.01(A).

On December 2, 1993, the Butler County Sheriff's Department responded to a 911 call from Melissa Grasa, who reported that something was wrong with her husband; she did not think he was breathing and saw blood on him. Upon arrival at the Grasa residence, officers discovered a deceased Michael Grasa lying on a bed in a pool of blood. The victim had died from two wounds inflicted by arrows fired from a crossbow. The record indicates that Melissa Grasa and appellant had been having an affair for several months prior to Michael Grasa's death.

Appellant and Melissa Grasa were both arrested and indicted for aggravated murder. They were granted separate trials. A jury found appellant guilty of

aggravated murder, and he was sentenced to life imprisonment. Grasa was found guilty of aggravated murder in a subsequent trial.

■ On appeal, appellant raises five assignments of error for review. In his first assignment of error, appellant contends that the trial court erred in excluding certain out-of-court statements made by Grasa to Amy Benningfield and Marie Branham in which Grasa purportedly admitted her guilt and exculpated appellant of any liability for the murder of her husband. Appellant argues that Grasa's statements are admissible under Evid.R. 804(B)(3), the exception to the hearsay rule for statements against interest by declarants who are deemed unavailable to testify at trial.

■ Hearsay evidence is not admissible "unless subject to a relevant exception." *State v. Steffen* (1987), 31 Ohio St.3d 111, 119, 31 OBR 273, 280, 509 N.E.2d 383, 392. Evid.R. 804(B)(3) provides an exception for statements against interest when the declarant is unavailable to testify as a witness:

*"Statement against interest.* A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

In order for Grasa's out-of-court statements to qualify as an exception to the hearsay rule under Evid.R. 804(B)(3), it must be established that (1) Grasa was unavailable as a witness, (2) the statements were against Grasa's interest and tended to subject Grasa to criminal liability, and (3) corroborating circumstances indicate the trustworthiness of the statements. All three elements must be present in order for statements against interest to be admissible under Evid.R. 804(B)(3). See, *e.g., State v. Gilliam* (1994), 70 Ohio St.3d 17, 20, 635 N.E.2d 1242, 1245–1246. Appellant contends that Grasa's statements should have been admitted because all three elements were present.

There is no question that Grasa was unavailable as a witness because she asserted her Fifth Amendment right against self-incrimination. *State v. Sumlin* (1994), 69 Ohio St.3d 105, 108, 630 N.E.2d 681, 683–684. Therefore, the first element of Evid.R. 804(B)(3) was satisfied.

With respect to the second requirement of Evid.R. 804(B)(3), the trial court found that at the time Grasa made the statements in question, they were not against her penal interest and did not subject her to criminal liability. We disagree. In her statements, Grasa admitted committing the murder of her

husband, which was clearly against her penal interest. *State v. Landrum* (1990), 53 Ohio St.3d 107, 113, 559 N.E.2d 710, 719–720. Furthermore, when the statements were made, Grasa had been charged with but not yet convicted of aggravated murder. Therefore, these statements certainly tended to expose her to criminal liability and the second element of Evid.R. 804(B)(3) was satisfied.

Finally, pursuant to Evid.R. 804(B)(3), there must be corroborating circumstances which clearly indicate the trustworthiness of the statements sought to be admitted. "[A] bare showing of some extent of corroboration is not enough. Instead, the rule contemplates a demonstration of corroborating circumstances * * * which, on balance, persuade the trial judge that the statement bears the clear indicia of reliability and trustworthiness, leaving the ultimate determination of credibility to the jury." *State v. Saunders* (1984), 23 Ohio App.3d 69, 73, 23 OBR 132, 137, 491 N.E.2d 313, 319. See, also, *Lowery v. Maryland* (D.Md.1975), 401 F.Supp. 604, 607–608, affirmed without opinion, (C.A.4, 1976), 532 F.2d 750. "The determination of whether corroborating circumstances are sufficient to admit statements against penal interest as a hearsay exception generally rests within the discretion of the trial court." *Landrum, supra,* 53 Ohio St.3d at 114, 559 N.E.2d at 720.

In this case, the trial court found insufficient corroborating circumstances to establish the trustworthiness of Grasa's statements, since Grasa had a motive to fabricate, had made at least some of the statements in jest, and had told numerous contradictory stories. The trial court concluded that since appellant and Grasa were involved in an intimate relationship, Grasa had a motive to make the statements to assist in the acquittal of appellant, her paramour. When the statements were made, the trial court found that Grasa was concerned with getting appellant "off the hook," since she believed she had a viable defense, namely battered woman's syndrome, that would exonerate her from all liability for the crime. Therefore, we find sufficient evidence in the record to support the trial court's conclusion that the third element required by Evid.R. 804(B)(3) was not satisfied.

■ Statements tend to be trustworthy when they are spontaneous, corroborated by other evidence, and against penal interest, and the declarant is available for cross-examination. *Chambers v. Mississippi* (1973), 410 U.S. 284, 300–301, 93 S.Ct. 1038, 1048–1049, 35 L.Ed.2d 297, 311–312. In this case, although Grasa was not available for cross-examination and the statements she made were against her penal interest, there were insufficient corroborating circumstances to justify admission of the statements.

■ The decision whether to admit hearsay statements of an unavailable witness as statements against interest rests within the sound discretion of the

trial court. *Sumlin, supra,* 69 Ohio St.3d at 108–109, 630 N.E.2d at 683–684; *Landrum, supra,* 53 Ohio St.3d at 113, 559 N.E.2d at 719–720. Based upon the record before us, we cannot conclude that the trial court abused its discretion by excluding the statements made by Grasa. Accordingly, appellant's first assignment of error is overruled.

In his second assignment of error, appellant argues that the trial court erred in prohibiting Amy Benningfield from testifying to impeach Grasa. Grasa's testimony was proffered by the defense out of the presence of the jury. While Grasa did assert her Fifth Amendment privilege, she also answered some questions. In particular, Grasa testified that she did not tell Benningfield that she had murdered her husband. Defense counsel then called Benningfield to the stand and proffered her testimony out of the presence of the jury in order to impeach Grasa through prior inconsistent statements wherein Grasa admitted murdering her husband.

As discussed in connection with appellant's first assignment of error, the trial court ruled that Grasa's statements to Benningfield were inadmissible hearsay not subject to the exception for statements against interest. Further, since Grasa's testimony was not heard by the jury, the testimony of Benningfield was unnecessary because there was no reason for defense counsel to impeach testimony not before the jury. Appellant's second assignment of error is overruled.

In his third assignment of error, appellant asserts that the trial court erred in prohibiting Grasa from testifying in front of the jury. The trial court was advised that if Grasa was called to testify, she would plead the Fifth Amendment. Therefore, the trial court had Grasa proffer testify out of the presence of the jury. The proffered testimony took place during appellant's trial immediately after the state rested its case and prior to the defense's opening its case.

The trial court did not allow Grasa to take the stand only to invoke her Fifth Amendment rights because such a procedure would permit the jury to make impermissible inferences. See McCormick, Evidence (3 Ed.1984) 297, Section 121. The jury could have made two possible inferences from Grasa taking the stand and invoking the Fifth Amendment: (1) Grasa was involved in the offense with appellant, or (2) Grasa committed the crime, tending to exonerate appellant. *Id.* However, "[a] jury simply may not consider invocation of the privilege against self-incrimination for any purpose." *Columbus v. Cooper* (1990), 49 Ohio St.3d 42, 47, 550 N.E.2d 937, 941. Therefore, we find that the trial court correctly refused to allow the jury to speculate as to why Grasa invoked her Fifth Amendment rights and properly prohibited her from taking the stand in front of the jury.

In *Cooper*, the accused sought to call a witness at trial who had previously invoked his Fifth Amendment privilege against self-incrimination at a pretrial hearing. *Id.* at 43, 550 N.E.2d at 937–938. The trial court determined after the hearing and prior to trial that the witness would not be permitted to be called to testify. On appeal, the Ohio Supreme Court held that the trial court should have allowed the witness to be called to testify at trial.

The Supreme Court based its decision upon the fact that the witness was not called to testify merely for the purpose of asserting his Fifth Amendment right against self-incrimination. *Id.* at 44, 550 N.E.2d at 938–939. The witness was also called to allow the jury an opportunity to view him, as it was the accused's contention that he and the witness were similar in appearance, and that the witness, not the accused, committed the crime. Thus, the accused's intent in calling the witness was "to afford the jury the opportunity to compare the physical appearance of [the accused] and [the witness] but *not to get before the jury [the witness's] assertion of his Fifth Amendment rights.*" (Emphasis added.) *Id.* at 47, 550 N.E.2d at 941.

Unlike the situation in *Cooper*, appellant offers no justification for calling Grasa to the stand other than for the purpose of having her invoke the Fifth Amendment in front of the jury. In fact, when appellant indicated a desire to call Grasa to the stand, Grasa's attorney informed the court and assured defense counsel that he would advise Grasa to assert her Fifth Amendment rights, and she did in fact assert those rights during the in-trial hearing conducted by the court out of the presence of the jury. Permitting Grasa to take the stand in this situation would have been improper. There is no evidentiary value to a witness' asserting the Fifth Amendment privilege against self-incrimination. Under the circumstances, the trial court did not err in prohibiting Grasa from taking the stand after she appeared as a witness and asserted her Fifth Amendment rights. Appellant's third assignment of error is overruled.

■ In his fourth assignment of error, appellant argues that the trial court erred in prohibiting a defense expert from testifying as to certain test results. Appellant called the expert to testify concerning an experiment the expert conducted involving the shooting of arrows into a pig skull stuffed with styrofoam. Defense counsel had listed the expert in a pretrial discovery statement, but the expert's report detailing the experiment was not disclosed to the prosecution before trial. The report was disclosed to the prosecution only minutes before defense counsel sought to call the expert at trial.

The trial court determined that the last-minute disclosure of the defense expert's report was unfair to the prosecution. Therefore, the trial court confined the expert's testimony to his expertise as developed through his experience and precluded testimony based upon the pig skull experiment.

Crim.R. 16(C)(1)(b) requires a defendant to provide the prosecution with "any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, available to or within the possession or control of the defendant, and which the defendant intends to introduce in evidence at the trial." If a party fails to comply, "the court may order such party to permit the discovery or inspection, grant a continuance, or *prohibit the party from introducing in evidence the material not disclosed,* or it may make such other order as it deems just under the circumstances." (Emphasis added.) Crim.R. 16(E)(3).

"The imposition of sanctions for discovery violations is within the sound discretion of the trial court and the court is empowered to impose whatever sanction it deems just under the circumstances." *State v. Montes* (1993), 92 Ohio App.3d 539, 548, 636 N.E.2d 378, 384; *State v. Harcourt* (1988), 46 Ohio App.3d 52, 54, 546 N.E.2d 214, 217–218. The trial court excluded only that expert testimony concerning the pig skull experiment. All other testimony by the expert was permitted. Under the circumstances, the sanction imposed by the trial court is entirely consistent with the Criminal Rules and does not constitute an abuse of discretion. Accordingly, appellant's fourth assignment of error is overruled.

In his fifth assignment of error, appellant contends that trial counsel provided ineffective assistance by failing to secure expert witness test results early enough to conform with the Criminal Rules. Appellant claims that defense counsel's failure to produce the expert's report regarding the pig skull experiment until minutes before the expert was to testify amounts to ineffective assistance of counsel.

A defendant who claims ineffective assistance must show (1) deficient performance by counsel and (2) resulting prejudice. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. The performance inquiry requires the reviewing court to ask whether, under the totality of the circumstances, "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. The prejudice inquiry involves a determination whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.*

When addressing the admission of the pig skull experiment into evidence, the trial court found that defense counsel was not at fault in failing to disclose the expert's report earlier; rather, the expert witness was at fault in failing to prepare the report promptly. In addition, the record indicates that defense counsel had made efforts, more than a week before trial, to encourage the expert to prepare a report of the test results immediately. After reviewing the record, we are unpersuaded that defense counsel's performance was so deficient and unreasonable as to constitute ineffective assistance of counsel.

In addition, appellant has failed to demonstrate a reasonable probability that, but for the absence of the pig skull experiment, the result of the trial would have been different. The defense expert was prohibited only from testifying concerning the pig skull experiment. Defense counsel was able to elicit from the expert much of the information sought to be introduced through the pig skull experiment by questioning the expert about his own archery experience and thereby advancing appellant's theory of how the murder occurred. After examining the record, we are unable to find resulting prejudice to appellant.

In light of all the circumstances, we find that trial counsel's representation was neither professionally unreasonable nor prejudicial to appellant. For these reasons, appellant was not denied effective assistance of counsel and his fifth assignment of error is overruled.

*Judgment affirmed.*

WILLIAM W. YOUNG, J., concurs.

KOEHLER, J., dissents.

KOEHLER, Judge, dissenting.

In order to find the confessions of the witness, Grasa, inadmissible, it was necessary that the trial court make a factual finding that the hearsay statements lacked trustworthiness. The trial court must be persuaded by the corroborating circumstances of the reliability of the statements. Without support in the record, the trial court speculated that the witness had a motive to fabricate her inculpatory hearsay statements to the authorities and others that she killed her husband.

The court below provided the motive, finding that Grasa wanted her paramour, appellant herein, off the hook. The trial court presumed that the witness believed she had a good defense to the pending murder charge against her.

The court's ruling prevented appellant from presentation of testimony in support of his defense. Whether or not the witness had a motive to fabricate her

confession and whether or not her statements were worthy of belief are determinations to be made by the fact finder, the jury in this cause.

To deny the defense the opportunity to present the testimony was prejudicial to appellant's case and was an abuse of discretion. Accordingly, I must dissent.