OPINION
Defendant-Appellant, Gregory L. Coleman ("Appellant"), appeals the jury verdict finding him guilty of one count of aggravated murder, in violation of R.C. 2903.01(B), and one count of aggravated burglary, in violation of R.C.2911.11(A)(1). Appellant was also charged with and found guilty of two firearm specifications. For the following reasons, we affirm the judgment of the trial court.
The facts and procedural history of the case are as follows. In the early morning hours of November 17, 1998, Appellant, armed with a handgun, proceeded to the home of former acquaintance and business associate, Willie West ("West").[1] At the time, West apparently owed Appellant money. Upon arriving at West's home, Appellant proceeded to the back door and began to knock. At the time, West and his housemate, Bob Moore ("Moore"), were asleep on separate couches in the living room. After repeatedly failing to elicit a response, Appellant forced his way into the home through the back door. Thereupon, he fired numerous shots in West's direction. West was struck twice once in the eye and once in the head. Startled by the sound of gunshots, Moore fled to his bedroom. Appellant, meanwhile, ran from the home. Shortly thereafter, Moore fled the residence and called the police.
Appellant was tried before a jury which found him guilty of aggravated murder and aggravated burglary. For his crimes, the trial court imposed a sentence of life imprisonment with parole eligibility after serving twenty years, and a ten-year term of imprisonment, respectively. The sentences were ordered to run consecutively. Appellant also was found guilty of two firearm specifications, and was sentenced to two three-year terms of imprisonment. The firearm specification sentences were ordered to run concurrently.
Appellant now appeals, setting forth two assignments of error.
 ASSIGNMENT OF ERROR NO. I The trial court committed an error of law by imposing
separate, maximum, consecutive sentences.
In his first assignment of error, Appellant asserts that the trial court erred in the sentencing phase of his trial. Specifically, Appellant maintains that his aggravated burglary conviction should have been merged, for purposes of sentencing, with his conviction for aggravated murder. Appellant further maintains that the trial court erred in imposing the maximum sentence for the offense of aggravated burglary and likewise erred in sentencing him to consecutive sentences.
Appellant initially maintains that the crimes of aggravated burglary and aggravated murder are allied offenses of similar import, and should have been merged for purposes of sentencing pursuant to R.C. 2941.25. For the following reasons, we disagree.
R.C. 2941.25 provides in pertinent part, as follows:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 In his brief, Appellant urges this Court to follow the Supreme Court of Ohio's recent decision in State v. Rance (1999), 85 Ohio St.3d 632, which clarified the test to be applied when reviewing claims involving allied offenses of similar import. The Court in Rance held in pertinent part as follows:
 Under an R.C. 2941.25(A) analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract. (Emphasis sic.)
Id. at paragraph one of the syllabus. Appellant argues that, upon application of this new standard, the crime of aggravated burglary is not a separate crime but is merely incidental to the crime of aggravated murder. We disagree. The Supreme Court of Ohio has repeatedly and consistently held that the crimes of aggravated burglary and aggravated murder are not allied offenses of similar import. See, e.g., State v. Frazier (1995), 73 Ohio St.3d 323;State v. Henderson (1988), 39 Ohio St.3d 24, 28; State v. Moss
(1982), 69 Ohio St.2d 515. In particular, the Court in Frazier,supra, held in pertinent part, as follows:
 The elements of aggravated burglary and aggravated murder do not correspond to such a degree that the commission of one results in the commission of the other. `[I]n order to commit either the crime of aggravated burglary or aggravated murder, the other crime need not be committed. * * * "The two offenses are not prerequisites, one for the other. To consummate either offense, the other need not by definition be committed. Aggravated murder and aggravated burglary are never merely incidental to each other * * *.'" (Citation omitted.)
 Frazier, 73 Ohio St.3d at 324, quoting Henderson
(1988), 39 Ohio St.3d at 28.
Despite the new test set forth in Rance, supra, for comparing the statutory elements of two or more offenses, we find that the past decisions of the Supreme Court of Ohio on this issue remain the controlling authority. Having so found, we find that the trial court did not err in failing to merge, for purposes of sentencing, Appellant's convictions for aggravated burglary and aggravated murder. Accordingly, Appellant's proposition lacks merit and is not well-taken.
Appellant next maintains that the trial court erred in imposing upon him the maximum sentence for the offense of aggravated burglary. For the following reasons, we disagree.
Initially, we note that R.C. 2953.08(G)(1) allows a reviewing court to vacate a sentence and remand it to the trial court for resentencing if the appellate court finds, by clear and convincing evidence, that: "(a) the record does not support the sentence; * * * [or] (d) [t]hat the sentence is otherwise contrary to law."
In the case before us, Appellant was found guilty of aggravated burglary. Aggravated burglary is a felony of the first degree. See R.C. 2911.11(B). A trial court may impose a term of imprisonment of three to ten years for a felony of the first degree. See R.C. 2929.14(A)(1). In the case herein, Appellant was sentenced to a term of ten years imprisonment for the offense.
Under Ohio felony sentencing law, a trial court must make certain findings prior to sentencing a defendant to a maximum sentence. R.C. 2929.14(C) states, as follows:
 Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section.
This Court has repeatedly held that "it is the trial court's findings under R.C. 2929.03, 2929.04, 2929.11, 2929.12, 2929.14, and 2929.19 which in effect, determine a particular sentence and that a sentence unsupported by these findings is both incomplete and invalid." State v. Bonanno (June 24, 1999), Allen App. No 1-98-59 and 1-98-60, unreported; see, also, State v. Martin (June 23, 1999), Allen App. No. 1-98-81, unreported. A trial court must strictly comply with the relevant sentencing statutes by making such findings on the record at the sentencing hearing. Bonanno,supra, at 6. Further, when required, the court must state its particular reasons for doing so. Id.
In his brief, Appellant asserts that the trial court's determination with respect to the seriousness and recidivism factors of R.C. 2929.12(B) was erroneous and did not warrant the imposition of a maximum prison term.[2] Initially, with respect to the charge of aggravated burglary, the trial judge stated on the record at the sentencing hearing that Appellant had committed the worst form of the offense and had posed the greatest likelihood of committing future crimes. The trial judge also stated in sufficient detail his reasons for imposing the maximum sentence upon Appellant. In doing so, the trial judge correctly utilized and properly considered, despite Appellant's claim to the contrary, the seriousness and recidivism factors enumerated in R.C. 2929.12.[3] Thus, Appellant's argument is not well-taken.
Appellant next maintains that the trial court did not make the required findings before sentencing him to consecutive sentences. For the following reasons, we disagree.
R.C. 2929.14(E) states in pertinent part, as follows:
 (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
* * *
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
When consecutive sentences are imposed under R.C. 2929.14, the trial court must also follow the requirements set forth in R.C.2929.19(B). R.C. 2929.19(B)(2)(c), states in pertinent part, as follows:
 (2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
* * *
 (c) If it imposes consecutive sentences under [R.C. 2929.14], its reasons for imposing the consecutive sentences;
In the case herein, a review of the transcript of the hearing reveals that the trial judge stated on the record at the sentencing hearing that the imposition of consecutive sentences was necessary to protect the public from future crime and to punish the offender. The trial judge further found that the imposition of consecutive sentences was not disproportionate to the seriousness of Appellant's conduct and to the danger he posed to the public. The trial judge also noted that the harm caused by Appellant's offenses was so great or unusual that no single prison term for either of the offenses could adequately reflect the seriousness of his conduct.
Pursuant to the foregoing, the trial judge complied with the statutory requirements of R.C. 2929.14(E)(4) in sentencing Appellant to consecutive prison terms. Further, the trial judge correctly utilized and properly considered the seriousness and recidivism factors enumerated in R.C. 2929.12 in support of its decision to impose the consecutive sentences. Thus, Appellant's argument is not well-taken.
Accordingly, Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II The Defendant was denied a fair trial and due process by the erroneous evidentiary rulings of the trial court.
In his second assignment of error, Appellant asserts that the trial court made numerous evidentiary errors during the guilt phase of his trial. We will separately address each of Appellant's alleged errors below.
Appellant initially maintains that the trial court erred in allowing into evidence the testimony of Billy Wayne Garland that he had become a born-again Christian. Appellant asserts that Garland's statement prejudiced him because it tended to bolster Garland's credibility with the jury.
Initially, we note that Appellant did not specifically object to Garland's statement. It is well-settled that absent plain error, the failure to object at trial waives the right to appeal the issue. Crim.R. 52(B); State v. Long (1978), 53 Ohio St.2d 91,97. In order to find plain error, this Court must find that but for the admission of Garland's statement, the outcome of the trial would clearly have been different. Id. at 97.
Having reviewed Garland's testimony as well as the transcripts of the matter, we cannot in good conscience say that but for his statement, the outcome of the trial would have been different. Moreover, it is axiomatic that the jury makes the final determination as to the credibility of each witness. SeeState v. Walker (1978), 55 Ohio St.2d 208, 210, 213. Thus, the jury was free to disregard Garland's statement in its entirety. For these reasons, we cannot say that Appellant was unduly prejudiced by the statement's introduction into evidence.
Appellant next maintains that the trial court erred in allowing Bob Moore, Appellant's housemate, to testify about an alleged previous physical altercation between West and Appellant. In his brief, Appellant sets forth what he contends are several grounds for reversal of the present case. In particular, asserts that Moore's testimony should not have been allowed into evidence on the grounds that the testimony was hearsay, was offered solely for the purpose of showing Appellant's propensity for violence, and was irrelevant. We will now address each of Appellant's assigned errors.
Initially, Appellant objected to Moore's testimony on hearsay grounds. It is well-established that "`[h]earsay' is a statement, other then one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Such hearsay is not admissible except as provided by, inter alia, constitutional law and as otherwise provided by law. Evid.R. 802. Further, "hearsay evidence is not admissible `unless subject to a relevant exception.'" State v. Branham (1995), 104 Ohio App.3d 355, 358, quoting State v. Steffen (1987), 31 Ohio St.3d 111, 119.
In its brief, the State contends that West's statements fall within the excited utterance exception to the hearsay rule.[4]
The excited utterance exception allows for the admission of hearsay testimony if the following two requirements are met: (1) the statement relates to a startling event, and (2) the statement is made under the stress of that event. Evid.R. 803(2); State v.Taylor (1993), 66 Ohio St.3d 295. The statement does not have to be made within a certain time after the event in order to be an excited utterance. Id. at 303. Furthermore, pertinent case law states that the trial court should be afforded wide latitude in its determination of whether a statement should be admitted under the excited utterance exception to the hearsay rule. State v.Wagner (1986), 30 Ohio App.3d 261, 263.
In the present case, Moore testified that approximately one week prior to West's death, West returned home with a bloody face and was visibly upset. According to Moore, West was crying when West returned home. West allegedly told Moore that Appellant had struck him in the face, that Appellant was dangerous, and that Moore should stay away from Appellant.
Under the factual circumstances presented herein, we find that West's statements relate to a startling event and were made under the stress of that event. Thus, we find that West's statements fall within the excited utterance exception to the hearsay rule.
Appellant next maintains that Moore's testimony should not have been allowed into evidence on the grounds that the testimony was offered solely to underscore or show Appellant's propensity for violence. It is well established that evidence of a defendant's prior bad acts is inadmissible to demonstrate that the defendant has a propensity or inclination to commit the offense in question. State v. Mann (1985) 19 Ohio St.3d 34; see, also, Evid.R. 404(B). Evid.R. 404(B) states in pertinent part, as follows:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
The Supreme Court of Ohio has held that if there is substantial proof that the alleged other act was committed by the defendant and the evidence does in fact tend to prove any of those things enumerated, then evidence of the other act may be admissible. State v. Lowe (1994), 69 Ohio St.3d 527, 530, citingState v. Broom (1988), 40 Ohio St.3d 277, 282-83; see, also, R.C.2945.59. However, to be admissible, the other acts evidence must be related to and share common features with the crime in question. Lowe, supra.
In the present case, we find that Moore's testimony was not offered to show Appellant's inclination or propensity for violence, but was offered into evidence for purposes of proof of motive and intent to cause West further harm in the future. There is also substantial proof that Appellant physically assaulted West one week prior to his death. In particular, Moore testified to that fact at trial. Moreover, shortly after the assault, West reported the incident to the proper authorities. Lastly, Moore testified at trial that West had owed Appellant money. Thus, the evidence adduced at trial reveals a common link between the other act and Appellant's crimes in question. For all of the foregoing reasons, Appellant's argument is without merit.[5]
Appellant next maintains that Moore's testimony should not have been admitted into evidence because his testimony lacked relevance. Evid.R. 401 reads as follows:
 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
It is well established that relevancy determinations are best made by the trial judge, who is in a position to analyze the impact of the evidence on the jury. See, e.g., Renfro v. Black (1990),52 Ohio St.3d 27, 31. Moreover, evidentiary rulings based on relevance will not be overturned absence an abuse of discretion.Nielson v. Meeker (1996), 112 Ohio App.3d 448, 450. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id.
In the case before us, Moore's testimony was circumstantial evidence of a previous physical altercation between West and Appellant. That testimony, having already been found admissible pursuant to the excited utterance exception to the hearsay rule, as well as evidence of Appellant's proof of motive and future plan, was certainly relevant to the determination of the action. Thus, we cannot say that the trial court abused its discretion in admitting Moore's statements into evidence. For this reason, Appellant's argument lacks merit and is not well-taken.
Appellant next maintains that the trial court erred in allowing into evidence his videotape statement to the police. Specifically, Appellant asserts that several portions of the statement were irrelevant and their resultant admission into evidence unfairly prejudiced the jury.
At trial, Appellant objected to that portion of the videotape statement wherein Detective Breitigan of the City of Lima Police Department questioned him regarding his alleged involvement with and knowledge of a drug operation located at 598 Harrison Street, Lima, Ohio. In particular, Appellant argues that the admission of this portion of the videotape was irrelevant and prejudicial.
We have reviewed the foregoing statements and, for the following reasons, cannot in good conscience say that the trial court erred in admitting them into evidence. First, during his interview with the police, Appellant on his own volition informed Detective Breitigan that he had spent much of the afternoon and evening of November 16, 1998, at the Harrison Street residence. During the interview, Appellant also informed Detective Breitigan that he had spent the night at that residence.
Appellant's statements set forth his own version of the events and his whereabouts on the prior afternoon and evening, and morning of, West's death. Appellant's involvement in the drug operation were merely incidental facts elicited during the interview. For all of the above reasons, we cannot say that the trial court erred in admitting Appellant's statements into evidence. Accordingly, Appellant's argument lacks merit and is not well-taken.
Appellant next asserts that the foregoing portions of the videotape interview should not have been admitted into evidence because they unfairly prejudiced the jury. Evid.R. 403 states as follows:
 Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice * * *.
When considering whether evidence should be excluded under Evid.R. 403, trial courts are vested with broad discretion, and appellate courts should not interfere absent a clear abuse of that discretion. State v. Allen (1995), 73 Ohio St.3d 626, 633.
Again, the foregoing statements set forth Appellant's own version of the events and his whereabouts on the prior afternoon and evening, and morning of, West's death. The statements were merely presented to aid the jury in its determination of the facts, rather than to improperly inflame or prejudice. Accordingly, Appellant's argument lacks merit and is not well-taken.
Appellant next maintains that the trial court erred in allowing into evidence that portion of the videotape involving the past physical altercation between him and West. In the videotape interview, Detective Breitigan questioned Appellant about that previous physical altercation.
In his brief, Appellant contends that pursuant to Evid.R. 404(B), the videotape testimony regarding the altercation with West should not have been admitted into evidence. Appellant also argues that the trial court erred in allowing Detective Breitigan to testify at trial as to the contents of that portion of the interview.
Appellant contends that the videotape statements and Detective Breitigan's testimony were merely offered to show his inclination or propensity for violence. Again, having previously found the testimony regarding the past physical altercation admissible at trial, we find no error in the trial court's evidentiary ruling on this issue and thus decline to address the matter any further.
Appellant further contends that the trial court erred in allowing into evidence that portion of the videotape interview wherein Detective Breitigan questioned him on whether or not he had owned a gun. Appellant also was questioned regarding his personal knowledge of a forty-four caliber handgun allegedly seized by the police from the Harrison Street residence shortly after West's death.
Upon a review of the videotape interview, we find the foregoing testimony relevant to the action and non-prejudicial in all respects. Thus, Appellant was not prejudiced by the introduction of this evidence at trial. Accordingly, Appellant's argument lacks merit and is not well-taken.
Appellant next contends that the trial court erred in failing to bestow upon him the unfettered right to question law enforcement officers about an alleged immunity agreement entered into between Appellant's brother, Michael Scott Coleman ("Coleman"), and the State of Ohio. A review of the transcript in this matter reveals that Coleman testified in front of a grand jury and provided other information to the authorities regarding the events leading up to and including West's death.
On April 19, 1999, Appellant filed a motion in limine to preclude state witnesses from testifying about the contents of Coleman's grand jury testimony or his statements to the police. Appellant also requested that he be allowed to establish the existence of the alleged immunity agreement at trial.
The trial court found that Appellant could question witnesses about the existence of such an agreement. In doing so, however, the trial court placed strict limitations on the questioning. In particular, the trial court held that if either the defense or the State opened the door to the reasons why such an agreement had been reached, the State was free to have its witnesses testify about the contents of Coleman's grand jury testimony and statements to the police.
Appellant now asserts the trial court's ruling foreclosed his ability to effectively question the officers regarding the alleged immunity agreement. In particular, Appellant asserts that the trial court's finding denied him his rights to a fair trial and due process of law. Appellant also contends that his constitutional right to confront witnesses against him under the state and federal constitutions was violated because the trial court's ruling essentially precluded him from establishing the existence of the immunity agreement. For the following reasons, we disagree.
A thorough review of the record in this case reveals that Coleman was unavailable for trial and did not testify. Moreover, neither his grand jury testimony nor his statements had reached the jury. Therefore, the existence of an immunity agreement between Coleman and the State had no relevance to the case herein. Appellant cannot now reasonably assert that the trial court's evidentiary ruling prejudiced him in any respect. For the foregoing reasons, we find that Appellant's argument lacks merit and is not well-taken.
Accordingly, for all of the foregoing reasons, Appellant's second assignment of error is overruled.
Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court. Accordingly, Appellant's assignments of error are not well-taken and are overruled.
Judgment affirmed.
BRYANT, P.J., and WALTERS, J., concur.
[1] The evidence adduced at trial established that West had once worked for Appellant's drug operation.
[2] In his brief, Appellant also contends that the trial court erred in imposing the maximum sentence for aggravated burglary because the crimes of aggravated murder and aggravated burglary arose out of a single course of conduct. For the reasons previously set forth in this opinion, we disagree, and decline to address the matter any further.
[3] The trial judge, at the commencement of the sentencing hearing and prior to imposing maximum, consecutive sentences, properly considered the seriousness and recidivism factors of R.C.2929.12.
[4] The State also argues that Appellant's past act was not offered to show his propensity for violence but rather was evidence of his proof of motive and intent. The State further contends that the testimony falls within the present sense impression to the hearsay rule. See Evid.R. 803(1).
[5] As we previously found, West's statements were also properly admitted into evidence pursuant to the excited utterance exception to the hearsay rule.