DECISION AND JUDGMENT ENTRY
The state appeals a judgment entered by the Athens County Court of Common Pleas granting a motion to suppress statements filed by David Ray Arnold. The state assigns the following error for our review:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO SUPPRESS. (30 July 1999 Decision on Motion to Suppress and Journal Entry)
A grand jury indicted appellee on one count of rape and one count of corruption of a minor involving appellee's sister. After entering a plea of not guilty to both charges, appellee filed a motion to suppress statements made during an interview with Sheila Shafer of Athens County Children's Services and Deputy James Thompson of the Athens County Sheriff's Department.
Appellee and his parents came to the Children's Services agency sometime after closing hours at the request of someone at the agency to "clear up" allegations leveled against appellee by his sister. At the outset of the interview, appellee was advised of his Miranda rights and signed a waiver of those rights. Appellee was interviewed for about twenty to thirty minutes with Deputy Thompson acting as the chief interviewer. Appellee's parents did not enter the room until after he confessed wrongdoing.
After hearing testimony from Deputy Thompson, Sheila Shafer and appellee, and listening to an audio tape of the interview, the trial court issued a decision and judgment entry. The trial court held that the questioning of appellee was non-custodial, but appellee's confession was involuntary and, therefore, must be suppressed.
Our review of a ruling on a motion to suppress involves a mixed question of law and fact. See United States v. Martinez (C.A.11, 1992), 949 F.2d 1117, 1119; United States v. Mejia (C.A.9, 1991),953 F.2d 461, 464-465; United States v. Wilson (C.A.11, 1990),894 F.2d 1245, 1254. The trial court assumes the role of trier of fact during such proceedings, State v. Payne (1995), 104 Ohio App.3d 355,364, 367; State v. Robinson (1994), 98 Ohio App.3d 560,570; State v. Rossiter (1993), 88 Ohio App.3d 162, 166, evaluating evidence and assessing the credibility of witnesses.State v. Brooks (1996), 75 Ohio St.3d 148, 154; State v. Carter
(1995), 72 Ohio St.3d 545, 552; State v. Fanning (1982), 1 Ohio St.3d 19,20. We must accept the trial court's factual findings unless they are "clearly erroneous." See United States v. Lewis
(C.A.1, 1994), 40 F.3d 1325, 1332. That is, we are bound to accept the court's factual determinations if supported by competent and credible evidence. State v. Harris (1994), 98 Ohio App.3d 543,546; State v. Claytor (1993), 85 Ohio App.3d 623,627. However, we perform a de novo review of the application of the law to those facts. Harris, supra, at 546; State v. Anderson
(1995), 100 Ohio App.3d 688, 691.
The Fifth Amendment to the United States Constitution provides, in pertinent part, that no person shall be compelled to be a witness against himself. This safeguard is applicable to the states through the Due Process clause of the Fourteenth Amendment to the Constitution, see Carter v. Kentucky (1981), 450 U.S. 288,305; Malloy v. Hogan (1964), 378 U.S. 1, 8, and, in any event, similar protections are afforded residents of this state under Section 10, Article I of the Ohio Constitution. State v. Simmons
(Aug. 25, 1992), Pike App. No. 473, unreported. A confession which is the product of "coercive police activity" is involuntary and thus violative of both the United States and Ohio Constitutions. See Colorado v. Connelly (1986), 479 U.S. 157,167; see, also, State v. Loza (1994), 71 Ohio St.3d 61, 66. Courts determine whether a confession was involuntary by examining the "totality of the circumstances" involved. See Statev. Broom (1988), 40 Ohio St.3d 277, 286; State v. DePew (1988),38 Ohio St.3d 275, 277; State v. Maurer (1984), 15 Ohio St.3d 239,257. Factors to be considered when reviewing the totality of the circumstances include the age, mentality and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment, and the existence of threat or inducement. SeeState v. Slagle (1992), 65 Ohio St.3d 597, 600; State v. Brewer
(1989), 48 Ohio St.3d 50, 57. In order for a confession to be deemed admissible, the prosecution must prove by a preponderance of the evidence that the statements were voluntary. Lego v.Twomey (1972), 404 U.S. 477, 489. See, also, State v. Melchior
(1978), 56 Ohio St.2d 15, 25; State v. Garcia (1986), 32 Ohio App.3d 38.
The state argues that the trial court erred in finding that Deputy Thompson engaged in coercive activity in obtaining appellee's confession. The state further argues that even if we find that Deputy Thompson engaged in coercive activity, after considering the totality of the circumstances, we must find that appellee's confession was voluntarily made. Appellee argues that the trial court correctly ruled that the confession was involuntary or, in the alternative, the trial court erred in finding the interrogation was non-custodial. We need only review the trial court's determination regarding the custodial status of appellee if we find that the confession was voluntarily made.
The trial court noted that there is some evidence which demonstrates that appellee's statements were voluntary. The trial court found that the interview was fairly short, only twenty to thirty minutes in length. The trial court also found that there was no evidence of physical deprivation or mistreatment.
The trial court concluded, however, that there was greater evidence that the confession was involuntary. Appellee was nineteen years old at the time of the interrogation and had completed eleventh grade. However, appellee testified that he was in a "special learning class" and can't "read or write too well." The trial court found that appellee's intellect and level of sophistication were considerably below that of his interrogators. The trial court also noted that there was no evidence that appellee had prior criminal experience and appellee's repeated references to Deputy Thompson as "sir" did not appear to be an act of courtesy, but an indicator of appellee's youth, inexperience and submission to authority.
The trial court indicated that the presence of deceit, threat and inducement on Deputy Thompson's part significantly affected the court's determination that the confession was involuntary. Three particular portions of the interrogation troubled the trial court.
First, Deputy Thompson read appellee his Miranda rights in such a manner that appellee believed he had the right to an attorney during the questioning. However, when appellee requested an attorney, Deputy Thompson ignored these requests and continued the questioning. The trial court held that a police officer cannot mislead a suspect by indicating that he has a right to counsel then spurn such requests without creating a coercive effect.
Second, the trial court found that Deputy Thompson's statement that he could put appellee's "butt in jail for a long time" and appellee's response "I know" indicated that appellee believed that Deputy Thompson had the power to ensure that appellee was incarcerated for a long period of time. The trial court found that Deputy Thompson misled appellee regarding the scope of his authority.
Lastly, the trial court relied on Deputy Thompson's allusion to leniency in exchange for appellee's cooperation. Specifically, Deputy Thompson told appellee that "maybe, just maybe" appellee's sister could keep appellee out of jail but if appellee "want[ed] anything from us," he would have to confess. The trial court found that the import of this statement was that if appellee confessed, Deputy Thompson could reduce the possibility of criminal charges or incarceration with the victim's cooperation.
The court found that these police actions were overreaching given appellee's age, inexperience and mentality. The court concluded that these deceitful tactics induced appellee's confession. Therefore, the court held that appellee's statements following his first request for an attorney must be suppressed as they were involuntarily made.
As the trial court's factual findings are supported by competent and credible evidence and not clearly erroneous, we accept the trial court's factual findings. Therefore, we must conduct a de novo review to determine if, based on these facts, appellee's confession was voluntary. See Arizona v. Fulminate
(1991), 499 U.S. 279, 287.
We concur with the trial court's finding that the police officer's statements to appellee constituted coercive behavior. We note, however, that a finding of police deceit does not conclusively establish that a statement was involuntary. State v.Johnston (1990), 64 Ohio App.3d 238, 246. However, it is a factor in the voluntariness determination. Id. Therefore, we must examine the totality of the circumstances to determine if appellee's statements to Deputy Thompson were voluntarily made.
Deputy Thompson's refusal to adhere to appellee's three requests for an attorney is most troubling to this Court. In a non-custodial interrogation, Miranda rights need not be given and no right to counsel attaches. Katz, Ohio Arrest, Search and Seizure (1998) 400, T 19.11(D). In this instance, Deputy Thompson erroneously informed appellee that he had the right to have an attorney present during questioning. When appellee requested an attorney, Deputy Thompson reiterated that appellee had "every right to have a lawyer present * * * while * * * being questioned" yet continued talking with appellee. Such action by a police officer is not only coercive but indicates to a suspect that his rights will not be respected by the police and the only way to terminate the interrogation is to cooperate with the police.
Deputy Thompson also stated that he "could put [appellee's] butt in jail for a long time" and stated that if appellee took responsibility for his actions and admitted that he was wrong, appellee's sister might be able to keep appellee from going to jail. Deputy Thompson then told appellee that he needed to be honest if he wanted any assistance. Admonitions to tell the truth directed at a suspect by police officers are not coercive. SeeState v. Wiles (1991), 59 Ohio St.3d 71, 81; State v. Cooey
(1989), 46 Ohio St.3d 20, 28. "Those admonitions, however, should be viewed in light of the context of the interrogation and with due consideration of the mental capacity of the interrogee."State v. Baker (Nov. 2, 1995), Athens App. No. 94CA1644, unreported. However, "promises that a defendant's cooperation would be considered in the disposition of the case, or that a confession would be helpful, do not invalidate an otherwise legal confession." Loza, supra, at 67.
Here, Deputy Thompson went beyond admonishing appellee to tell the truth. Deputy Thompson erroneously informed appellee that he had the authority and ability to place appellee in jail for "a long time" even though only the court had such authority. Deputy Thompson also implied that he or appellee's sister could help appellee avoid jail. We find that these statements alone do not demonstrate that appellee's statements were involuntary. However, Deputy Thompson's refusal to cease questioning after appellee requested an attorney in conjunction with these statements supports a finding that the statements were involuntary as appellee believed that Deputy Thompson would not stop questioning appellee or afford appellee the constitutional rights he believed he possessed absent a confession.
While this is not an egregious case of police overreaching, the state has not proven by a preponderance of the evidence that appellee's statements were voluntarily made. None of Deputy Thompson's statements alone would be sufficient to overbear appellee's will, but these statements in the aggregate, along with appellee's inexperience with the criminal justice system, age, and mentality, indicate that the statements were involuntarily made.
Therefore, we overrule the state's sole assignment of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. Evans, J.: Concur in Judgment and Opinion.
For the Court
BY: __________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk