OPINION
Defendant-appellant, Sedrick Franklin, appeals his conviction following a jury trial in the Butler County Court of Common Pleas for murder and felonious assault. We affirm the decision of the trial court.
On July 5, 2000, Darrell Wyatt approached Toni Bundy in order to purchase crack cocaine from her at her house in Hamilton, Ohio. Wyatt had purchased crack from Bundy previously in the day and was returning for more. As Wyatt approached Bundy's premises, Bundy came out of the house with appellant. Appellant said he would give Wyatt a better deal on crack than Bundy. Wyatt gave appellant $40 in exchange for the crack.
Wyatt returned to his vehicle and gave the crack to the passenger in his vehicle, Bruce Hennig. Hennig determined the substance was "fleece," or counterfeit crack. Wyatt went across the street to demand the return of his money from appellant. Appellant was standing next to a truck with passengers in it. When Wyatt approached appellant, Wyatt noticed appellant reach behind his back for something. Wyatt decided to "cut his losses," and ran to his vehicle. When Wyatt turned around, he saw appellant pointing a gun at him. Wyatt entered his vehicle and drove away. Wyatt heard three gunshots and the rear window of his vehicle was shattered. One of the bullets entered the headrest on the passenger side of Wyatt's vehicle. Another of the bullets struck Wyatt's passenger, Hennig, in the head, killing him. Wyatt drove to a nearby store where he called 911 to report the shooting.
Police arrived at the scene to investigate and interviewed appellant. Appellant claimed that he had spent the day at his grandmother's house, that he shot a game of pool at Michael's in Fairfield, that he stopped at the Ramada, and then returned to his grandmother's house. Appellant denied that he was in the area of the shooting on the night in question.
Detective Jim Calhoun then spoke to Bundy. She identified appellant from a photo lineup as the person who sold the "fleece" to Wyatt and fired gunshots at him. Bundy stated that after appellant sold Wyatt the "fake dope," she and appellant walked over to a pickup truck in which her friends, Lennie Riggins, Brandon Jarrett and Shonnie King, were seated. Bundy stated Wyatt approached appellant upset about the drug sale and requested the return of his money. Bundy stated Wyatt then walked back to his vehicle. Bundy then saw appellant pull out a gun, hold it sideways, and point it at Wyatt. Bundy testified at trial that she saw the muzzle flash from the gun fired at Wyatt's vehicle and that she heard three shots fired as Wyatt's vehicle drove away. Bundy told Det. Calhoun that appellant was the only person who had a gun that evening.
Lennie Riggins also gave a statement to the police that night. Riggins stated he witnessed the drug transaction and saw Wyatt confront appellant beside the truck to demand his money back. Riggins stated he heard three booms and then a thump as appellant jumped into the bed of the pickup truck.
Appellant was interviewed again after officers determined that his alibi was not true. Appellant maintained he did not have a gun. Appellant was tried before a jury and sentenced to 15 years to life in prison. Appellant appeals the conviction raising two assignments of error.
Assignment of Error No. 1:
 "THE DEFENDANT-APPELLANT RECEIVED THE [SIC] INEFFECTIVE ASSISTANCE OF COUNSEL."
An error by counsel, even if professionally unreasonable, "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland v. Washington (1984),466 U.S. 668, 691, 104 S.Ct. 2052, 2066, citing United States v.Morrison (1981), 449 U.S. 361, 364-365, 101 S.Ct. 665, 667-668. To warrant setting aside the judgment, appellant must meet the two-prong standard for evaluating an ineffective assistance of counsel claim as enunciated by the Supreme Court of Ohio. State v. Bradley (1989),42 Ohio St.3d 136, paragraphs two and three of the syllabus, citingStrickland, 466 U.S. 668, 104 S.Ct. 2052.
Appellant must show counsel's conduct was objectively deficient by producing evidence that counsel acted unreasonably to meet the first prong of the Strickland test. State v. Sallie, 81 Ohio St.3d 673, 674,1998-Ohio-343, citing State v. Keith, 79 Ohio St.3d 514, 534,1997-Ohio-367. To establish the second prong, appellant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Id. It is well-settled that a properly licensed attorney is presumed competent.Vaughn v. Maxwell (1965), 2 Ohio St.2d 299. Because there are "* * * countless ways to provide effective assistance in any given case," courts are to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *" when scrutinizing the reasonableness of counsel's representation.Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. With these legal standards in mind, we review the claims asserted by appellant.
Appellant argues a conflict of interest exists when a defendant's attorney also represents a witness to the crime and advises that witness to invoke his right to remain silent. Brandon Jarrett was one of the passengers in Riggins' pickup truck. Jarrett came to the police station for questioning, but was advised by his attorney to invoke his right not to talk with the police. Therefore, police were unable to obtain any statements from him. The attorney who advised Jarrett was the same attorney who represented appellant at trial. Appellant argues the police found a spent shell casing by the passenger door of the truck where Jarrett had been sitting. Appellant maintains that if Jarrett's involvement was innocent, he should have been allowed to speak with the police. Appellant also argues that if Jarrett gave a statement to the police, "additional reasons to raise reasonable doubt of [appellant's] involvement in the shooting" may have been revealed. Appellant argues that his attorney, by advising Jarrett to remain silent, prevented important information from being revealed which amounts to ineffective assistance of counsel.
However, appellant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Sallie, 81 Ohio St.3d at 674. Appellant has not shown that no reasonable fact-finder would have found appellant guilty had the alleged error not been made.
Bundy and Wyatt both identified appellant as the individual who sold Wyatt counterfeit cocaine. Bundy and Wyatt identified appellant as the individual Wyatt had an altercation with when Wyatt requested the return of his money for the counterfeit cocaine. Bundy testified she saw appellant pull a gun on Wyatt. Wyatt testified he saw appellant pointing a gun at his vehicle. Bundy testified she saw appellant fire the gun. Bundy testified that appellant was the only person who had a gun that evening. Riggins, Bundy, and Wyatt heard three gunshots. The rear window of Wyatt's vehicle was shot out. One of the bullets struck Hennig in the head, killing him.
Furthermore, Ronald W. Dye, a forensic investigator with the Ohio Bureau of Criminal Identification and Investigation, was given three Smith Wesson ("SW") .40 caliber shell casings from the crime scene for comparison. Two of the shell casings were found on the street and one was found in Riggins' pickup truck. Dye testified that all three shell casings were microscopically compared to each other and he confirmed that all the shell casings were fired from the same gun. Dye was also given the passenger seat headrest from Wyatt's vehicle. Dye testified that the headrest contained "a bullet jacket that is consistent with being a SW .40 caliber or 10 millimeter caliber."
Appellant has not shown how Jarrett's silence prohibited the police from discovering evidence favorable to appellant. Appellant has not shown that Jarrett's statements would not corroborate the statements of Bundy, Wyatt, and Riggins and further inculpate appellant. Riggins testified that Jarrett was in the vehicle with him when he heard the shots. Riggins testified he never saw Jarrett with a gun that night, never saw Jarrett fire a gun that night, and that Jarrett was in the car with him at the time he heard the shots take place. Furthermore, no inference of Jarrett's guilt may be drawn from his assertion of the right to remain silent. See State v. Branham (1995), 104 Ohio App.3d 355, 360. A reviewing court cannot presume that the possibility for conflict resulted in ineffective assistance of counsel. State v. Manross (1988),40 Ohio St.3d 180, 182. The mere possibility of a conflict of interest is insufficient to impugn a criminal conviction. Id. In sum, we find that appellant has failed to demonstrate that there exists a likely probability that, were it not for counsel's errors, the result of the trial would have been different. Therefore, the first assignment of error is overruled.
Assignment of Error No. 2:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT ADMITTED INTO EVIDENCE THE VIDEOTAPE OF APPELLANT'S SECOND CONVERSATION WITH THE POLICE."
The Fifth Amendment to the United States Constitution guarantees that "no person * * * shall be compelled in any criminal case to be a witness against himself." This privilege is protected, pursuant to Miranda v.Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, by advising a person subject to custodial interrogation, in clear and unequivocal language, that he has the right to remain silent. Id. at 467-68. Pursuant to Miranda, once a person in custody indicates that he wishes to remain silent, the interrogation must cease. Id. at 473-74. Statements obtained after an initial exercise of the right to remain silent are admissible only where the individual's right to cut off questioning has been scrupulously honored. U.S. v. Lopez-Diaz (C.A.9, 1980), 630 F.2d 661, 664, citingMichigan v. Mosley (1975), 423 U.S. 96, 103-04, 96 S.Ct. 321, 326-327.
Appellant argues it was improper to use his post-arrest silence against him. Appellant argues, even though he never stated he wished to remain silent, his refusal to speak to police for the majority of the interrogation effectively invoked his right to remain silent. Appellant maintains that since he invoked his right to remain silent it was improper to use the videotape of the interrogation as evidence because "his expression and refusal to respond" gave him a "guilty look." Appellant maintains that while he did speak to the police during the course of the interview, he only spoke "in response to the oppressive and haranguing nature of the questioning by police, [which was] clearly not a voluntary statement by [appellant]." Appellant argues the use of the videotaped statements violated the holding in Doyle v. Ohio (1976),426 U.S. 610, 96 S.Ct. 2240.
However, appellant was advised of his Miranda rights during the videotaped questioning. Appellant then spoke to the officers. TheDoyle violation was not raised in the pretrial suppression motion, at the suppression hearing, nor specifically objected to during the introduction of the videotape at trial, therefore, the issue must be reviewed under the plain error standard. Crim.R. 52(B).
Pursuant to Crim.R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Plain error does not exist "unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." State v. Maryland (1990), 50 Ohio St.3d 58, 62.
In Doyle, the United States Supreme Court held that using a prisoner's silence at the time of arrest and after he has received Miranda warnings to impeach that prisoner violates due process. The court also declared:
 "[e]very post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested * * *. Moreover, * * * it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Doyle at 617-618, 96 S.Ct. at 2244, 2245. However, appellant never testified, therefore, the videotape was not used for impeachment purposes. Doyle holds that using a prisoner's silence after he has received Miranda warnings to impeach that prisoner violates due process. (Emphasis added.) Doyle at 617-618, 96 S.Ct. at 2244, 2245. Since the videotape of appellant's interrogation was not used for impeachment purposes, Doyle is not applicable. Consequently, there was no Doyle violation.
Furthermore, a voluntary statement made by an accused during his interrogation after his arrest and prior to the time he has obtained counsel, after he has been informed of his constitutional right to remain silent, and after he has been informed that such statement may be used against him, is admissible in evidence, and its admission does not affect the validity of his conviction. Alexander v. Green (1965),2 Ohio St.2d 231, 233. Voluntary statements are the product of a declarant's free and rational decision to speak. United States v.Murphy (C.A.6, 1997), 107 F.3d 1199, 1205. A statement is involuntary if the declarant's free will is overborne. Id.
The videotaped interrogation begins at 12:32 p.m. Appellant is informed of the charges lodged against him. Appellant is then asked if he remembers his rights as they were explained to him when the officers questioned appellant the day before when he signed a Miranda card. Appellant is again advised that he has the right to remain silent, to end the questioning at any time, and to have counsel present. Appellant never invokes any of his rights. At 12:34 p.m., the officers ask appellant, "do you understand your rights," and he answers "yes, sir." The officers ask appellant, "do you want to tell us your side of the story." Appellant answers "no." Appellant never states during the questioning that he wishes to remain silent, however he does put his head down and avoid eye contact with the officers. The officers inform appellant that they know he was at the scene because a number of witnesses place him there. Appellant denies being at the scene and states "how you goin' to tell me where I was, I know where I was." The officers ask appellant "did you fire any shots?" Appellant answers, "I didn't kill nobody." The officers ask appellant "was it your gun?" Appellant answers, "I never had no gun," and states "I'm not lying to you." The officers ask appellant "is that your response, it that what you're going with," and appellant responds, "I ain't did nothing."
The entire interrogation is seven minutes in duration, from 12:32 to 12:39 p.m. Appellant's free will was not overborne in any manner. Appellant was informed of the charges against him. Appellant was advised of his right to remain silent and his right to counsel. Appellant did not invoke his right to remain silent or ask for counsel. Appellant voluntarily answered the officers' questions. Consequently, the videotape containing the statements was admissible and does not affect the validity of appellant's conviction. See Alexander, 2 Ohio St.2d at 233. Therefore, the second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.