The STATE of Ohio, Appellee,

v.

MONTES, Appellant.

[Cite as *State v. Montes* (1993), 92 Ohio App.3d 539.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64283.

Decided Dec. 20, 1993.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Michael Telep,* Assistant Prosecuting Attorney, for appellee.

*Paul Mancino, Jr.,* for appellant.

PATTON, Presiding Judge.

Defendant-appellant Dewey Montes appeals his jury trial conviction for grand theft of a motor vehicle in violation of R.C. 2913.02. Following trial, appellant was sentenced to a term of imprisonment of twenty-four months and was ordered to pay costs. The trial court suspended execution of the sentence and placed the appellant on three years' probation conditioned upon payment of restitution in the amount of $6,500, payment of court costs within ninety days, and payment of a $5,000 fine or, in the alternative, payment of $2,500 to Crime Stoppers.

At trial the parties entered into the following stipulations: (1) the appellant was not the owner of the 1984 Mercedes automobile that was the subject of the indictment; (2) the appellant was in receipt of the automobile from the impound lot; and (3) the appellant drove the automobile out of the state of Ohio.

The first witness to testify for the state was Nick Roscoe. Roscoe testified that in March 1991, he sold his 1984 Mercedes to a "Danny Bass" and his wife Barbara for the sum of $6,000 or $6,500. After receiving the purchase price in cash, he signed the back of the title and transferred an original notarized title to the purchaser together with a receipt.

The next witness to testify for the state was Barbara Montes. Mrs. Montes testified that she was the widow of Leo Montes, whom she claimed to have married in February 1987. During the course of the marriage, she and Leo had two children. She also indicated that Leo Montes used numerous aliases including "Danny Bass," Max Rizano and Joseph Lee.

Mrs. Montes further testified that in March 1991, she and Leo purchased a 1984 Mercedes from Nick Roscoe for $6,500. According to Mrs. Montes, a notarized title was transferred from Nick Roscoe to "Danny Bass."

On March 30, 1991, Mrs. Montes witnessed the fatal shooting of her husband Leo by her brother, Robert Miller, at her father's home. At the time of the shooting, the Mercedes was parked on the street in front of the home. The Cleveland police towed and impounded the vehicle because the license plates were not properly registered to the Mercedes.

Following the death of Leo Montes, appellant, the decedent's brother, made the funeral arrangements with the Catavolos–Bollinger Funeral Home in Cleveland. Consistent with those arrangements, the body was prepared and shipped to Chicago, where the services and burial were conducted. Mrs. Montes testified that she gave the appellant $4,000 for the funeral expenses and she believed that the $4,000 would cover all funeral costs.

After the funeral, Mrs. Montes discovered that the appellant had removed the vehicle from the impound lot without her permission. In August 1991, she reported the car stolen after coming to her senses and realizing the appellant was not going to return the vehicle. She testified that she never gave anyone permission to remove the vehicle from the impound lot. She further testified that she never consented to the appellant's taking of the Mercedes, selling of it, or using the sale proceeds to pay for funeral expenses.

Norman Beighey, the property custodian for the Cuyahoga County Coroner's Office, testified that State's Exhibit 2 was a list of personal property found on the body of Leo Montes. The list included a certificate of title for a 1984 Mercedes Benz. Exhibit 2 also indicated that the personal property was released to the appellant on April 2, 1991. Beighey testified that the property was released to appellant because he presented a release form and letter from the Bollinger–Catavolos Funeral Home indicating that the appellant had paid the funeral expenses. Beighey further testified that he complied with appellant's request to prepare a form letter from the coroner's office to the Cleveland Police Department. The letter requested that the police consider releasing the vehicle to appellant as the coroner's office had no hold or claim on the vehicle.

George Catavolos, co-owner of the Bollinger–Catavolos Funeral Home, testified that appellant made the funeral arrangements for Leo Montes. He also testified that appellant paid him $1,315.88 for the preparation and shipment of the body to Chicago. After receiving payment for his services, he requested that the coroner release the personal effects of Leo Montes to appellant because the appellant was handling the funeral arrangements.

Detective Gerald Tesar, an investigator in the Cleveland Police Auto Theft Unit, testified that he arrested appellant after investigating the reported theft of the 1984 Mercedes Benz. Detective Tesar also testified that the 1984 Mercedes was erroneously released to appellant on April 2, 1991. According to Detective Tesar, a title search on the vehicle revealed that the vehicle remained registered and titled to Nick Roscoe. However, Detective Tesar was aware of an alleged transfer from Roscoe to Leo Montes. Additionally, Detective Tesar testified that the appellant informed him that the vehicle was not stolen and that he took the vehicle and sold it to an individual in Chicago or Detroit.

The first witness to testify on behalf of the defense was Robert Montes, the appellant's first cousin. Robert testified that he came to Cleveland from Chicago when he heard that Leo had been shot by another family member. He further testified that he, Barbara Montes and Leo Miller were involved in a telephone conversation concerning the 1984 Mercedes. Despite defense counsel's attempts to inquire into the contents of that conversation, the trial court would not permit such and sustained the state's objections thereto.

The defense also attempted to present the testimony of Joe Yanez, a resident of California, and John Sturgo, a resident of Massachusetts. However, the trial court sustained the state's objection to their testimony based upon their absence from the defense witness list and the lack of notification to the state.

Sandy Sturgo, appellant's niece, testified that she knew Barbara Montes very well because Barbara was married to Leo Montes, who was her uncle. She further testified she discovered that Barbara pledged the car and the money for the funeral expenses "in a conversation with Barbara." When Sandy attempted to expound upon the above answer, the trial court sustained a state's objection and instructed the witness to answer only the question asked. The court further instructed the jury to disregard the unresponsive answer.

The appellant testified on his own behalf. He testified that on April 2, 1991, he picked up the personal effects of Leo Montes, including the certificate of title to the 1984 Mercedes, from the coroner's office. He also admitted securing the release of the 1984 Mercedes from the Cleveland Police Department Impound Unit.

The appellant further testified that he made the funeral arrangements for Leo Montes and paid for the services. He stated that the total for the services and burial amounted to approximately $4,500. Additionally, he testified that he spent an additional $1,200 to $1,700 on miscellaneous expenses to pay for lodging and food while family members stayed in Chicago.

According to appellant, Mrs. Montes gave him $4,000 in cash and gave him permission to sell the Mercedes to cover the funeral expenses. On or about April 15, 1991, appellant testified that he sold the vehicle to a person in Dearborn, Michigan, for $1,700.

Following presentation of the evidence and arguments of counsel, the jury found appellant guilty of grand theft of a motor vehicle.

Appellant filed a timely notice of appeal and subsequently raised the following assignments of error:

"I. The defendant was denied a fair trial when the court precluded the defendant from offering evidence that the alleged victim, Barbara Montes, had authorized disposition of the car to pay for the funeral of Leo Montes.

"II.   The defendant was denied due process of law and his right to present a defense when the court precluded the testimony of defense witnesses because of an alleged technical failure of disclosure.

"III.   The defendant was denied due process of law when the court would not allow questioning of Barbara Montes concerning her occupation.

"IV.   The defendant was denied his constitutional right of cross-examination when the court precluded cross-examination concerning a key issue in the case, that is, ownership of the vehicle.

"V.   The defendant was denied due process of law when the prosecuting attorney constructively amended the indictment in his argument to the jury and the court precluded defense counsel from arguing on behalf of the defendant in an effective fashion.

"VI.   The defendant was denied due process of law when the court did not properly and fully instruct the jury as to all of the elements of theft under which the defendant had been charged.

"VII.   The verdict and judgment are against the manifest weight of the evidence and violative of due process of law.

"VIII.   The defendant was denied due process of law when the court improperly instructed upon the definition of proof beyond a reasonable doubt.

"IX.   The defendant was denied due process of law when there was no showing that the alleged victim, Barbara Montes, was the owner of the vehicle in question.

"X.   The court abused the discretion and denied the defendant due process of law when imposing an unreasonable restitution together with a fine."

▮   In his first assignment of error, appellant claims that the trial court improperly denied him an opportunity to present evidence of a prior inconsistent statement made by Mrs. Montes.   Specifically, appellant argues that the trial court erred in refusing to permit him to question Robert Montes and Sandy Sturgo about the contents of their conversations, wherein Barbara Montes allegedly stated that the 1984 Mercedes was to be used for the payment of the funeral expenses.

Evid.R. 613 provides for the admission of a prior inconsistent statement for impeachment purposes.   Evid.R. 613(B) states:

"Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded a prior opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require."

Evid.R. 613(B) requires that a witness be afforded an opportunity to explain or deny a prior inconsistent statement before extrinsic evidence of that statement is admissible. If a witness denies making the statement, a proper foundation has been laid, and the evidence does not relate to a collateral matter, extrinsic evidence is admissible. *State v. Riggins* (1986), 35 Ohio App.3d 1, 519 N.E.2d 397.

In the instant case, during the cross-examination of Mrs. Montes, she denied ever telling anyone that the appellant was granted permission to sell the 1984 Mercedes or that he could use the sale proceeds to cover funeral expenses. In light of her response, we find that appellant's counsel laid the proper foundation for the introduction of prior inconsistent statements pursuant to Evid.R. 613. Next we must determine whether the trial court improperly refused to permit appellant's counsel from eliciting testimony regarding appellant's prior inconsistent statement.

Upon careful review of the trial transcript, we find that the trial court did not exclude Sandy Sturgo's testimony regarding the prior inconsistent statement. Specifically, the relevant portion of Sturgo's direct examination provides:

"Q. And do you recall Eli Miller coming and bringing $4,000?

"A. To Tom Sturgo, to give to Dewey Montes.

"Q. And for what purpose, if you know?

"A. For the funeral expenses. Barbara gave the car and the money for the funeral expenses.

"Q. How do you know Barbara gave the car and the money for funeral expenses?

"A. Because I had a conversation with her. All the family was talking that she wants to give $4,000—

"MR. TELEP: Objection.

"A. —and give the car.

"THE COURT: Sustained.

"Mrs. Sturgo, please answer the question as it is asked only, okay?

"Please put proper questions to the witness.

"MR. OZAN: Yes, ma'am.

"THE COURT: The jury will disregard the unresponsive answer."

Review of the above-quoted portion of the trial transcript reveals that Sturgo was permitted to testify that Mrs. Montes offered the car and the $4,000 to cover funeral expenses. The transcript further indicates that Sturgo testified that she

discovered this fact in a conversation with Mrs. Montes. Only after Sturgo's answer became unresponsive to defense counsel's question did the trial court sustain the state's objection. It was then that the trial court instructed Sturgo to answer only the question as asked and, further, instructed the jury to disregard the unresponsive portions of the answer. It is thus evident that the responsive portion of Sturgo's testimony, including reference to the prior inconsistent statement, was admitted by the trial court.

While the transcript does reveal that the trial court did not permit Robert Montes to testify concerning the prior inconsistent statement and repeatedly sustained the state's objections thereto, we find that the error is harmless. Both the appellant and Sandy Sturgo were permitted to testify concerning the contents of the prior inconsistent statement. Thus, the jury was fully apprised of the alleged statement that Mrs. Montes gave the appellant permission to sell the 1984 Mercedes and, further, that he could apply the sale proceeds to funeral expenses. Accordingly, we conclude that the trial court's error was harmless, as it is not evident from the record that appellant was prejudiced or that he was denied a fair trial by the exclusion of cumulative evidence.

Appellant's first assignment of error is overruled.

■ Appellant argues in his second assignment of error that the trial court abused its discretion by excluding the testimony of two defense witnesses whose names did not appear on the defense witness list.

Crim.R. 16(E)(3) sets forth a list of permissible sanctions that a trial court may impose when a party fails to comply with a discovery provision. It provides:

"Failure to comply. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence that material not disclosed, or it may make such other order as it deems just under the circumstances."

■ The imposition of sanctions for discovery violations is within the sound discretion of the trial court and the court is empowered to impose whatever sanction it deems just under the circumstances. *State v. Wiles* (1991), 59 Ohio St.3d 71, 571 N.E.2d 97; *State v. Finnerty* (1989), 45 Ohio St.3d 104, 543 N.E.2d 1233.

■ Moreover, the holding in *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 511 N.E.2d 1138, paragraph two of the syllabus, that "[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is

consistent with the purpose of the rules of discovery," should not be construed to mean that the exclusion of testimony or evidence is never a permissible sanction in a criminal case. It is only when the exclusion acts to completely deny the defendant his or her constitutional right to present a defense that the sanction is impermissible. *State v. Harcourt* (1988), 46 Ohio App.3d 52, 546 N.E.2d 214.

In the instant case, the trial court did inquire into the circumstances surrounding the discovery rule violation. Defense counsel stated John Sturgo was inadvertently left off the witness list. During its inquiry, the trial court determined that John Sturgo's impeachment testimony by extrinsic evidence was inadmissible under Evid.R. 608(B) and 609. It was also discovered that Joe Yanez was not placed on the witness list because defense counsel was unaware that he was coming in from California. Further, it was revealed that Yanez was present in the courtroom during the impaneling of the jury and that his testimony would have been merely cumulative.

Under these circumstances, we are unable to find that appellant was completely denied his constitutional right to present a defense. *Papadelis, supra.* Therefore, we find no abuse of discretion in the court's exclusion of the testimony pursuant to Crim.R. 16(E)(3). Accordingly, appellant's second assignment of error is overruled.

In his third assignment of error, appellant asserts he was denied due process of law by the court's failure to allow defense counsel to cross-examine Mrs. Barbara Montes concerning her alleged occupation as a fortuneteller.

In the instant case, the trial court did not prohibit defense counsel from cross-examining Mrs. Montes concerning her alleged employment as a fortuneteller. To that effect, the trial transcript provides that the following proceedings were had at side bar out of the hearing of the jury:

"THE COURT: What's your objection?

"MR. TELEP: The defendant is attempting to admit into evidence an exhibit, a document indicating an astrological card reader or something like that. I object on the point of relevance. It's not relevant to this matter.

"THE COURT: Let me ask Mr. Ozan, what purpose are you offering it?

"MR. OZAN: To impeach her credibility, your Honor.

"THE COURT: As to what?

"MR. OZAN: I am going to ask her the question, do you work? She is going to say no. I am positive of that. When she does, I am entitled to ask her about this.

"THE COURT: Okay. I will allow it for that purpose and that purpose only."

Following the above exchange, defense counsel proceeded to question Mrs. Montes about her employment as a fortuneteller. Barbara responded that she did not work and when confronted with Defendant's Exhibit A, a business card, she responded that it belonged to her mother-in-law. Appellant's contention that he was not permitted to cross-examine Barbara Montes concerning her employment as a fortuneteller thus lacks merit. Accordingly, his third assignment of error is overruled.

In his fourth assignment of error, appellant claims he was erroneously precluded from cross-examining Detective Gerald Tesar concerning the ownership of the 1984 Mercedes as of April 2, 1991. The trial transcript reflects that Detective Tesar was in fact permitted to give the following testimony concerning the ownership of the vehicle:

"Q. Let's go back to August 7th when you issued the warrant, and let's go further back to April, Impound Lot releases the car to Dewey. Who owned the car on that day?

"A. Which day?

"Q. April 2nd, 1991.

"A. Who owned the car?

"Q. Yeah.

"A. Legally?

"Q. Legally.

"A. Nick Roscoe.

"MR. TELEP: Objection.

"THE COURT: Overruled.

"A. Nick Roscoe."

It is thus evident appellant's claim that he was precluded from cross-examining Detective Tesar about the ownership of the 1984 Mercedes lacks merit. Accordingly, appellant's fourth assignment of error is overruled.

■ Appellant asserts in his fifth assignment of error that the state was impermissibly allowed to constructively amend the indictment in its closing argument to the jury. Additionally, appellant contends that the trial court precluded defense counsel from presenting an effective closing argument by sustaining various state objections.

■ Appellant failed to object to the statements made by the prosecutor in closing argument. He now claims that the prosecutor's argument constituted a constructive amendment to the indictment. Appellant's failure to raise the

alleged error at the trial court level where such error could have been avoided or corrected constitutes a waiver of the alleged error on appeal. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364; *State v. Gordon* (1971), 28 Ohio St.2d 45, 57 O.O.2d 180, 276 N.E.2d 243.

Additionally, "[c]onsiderable latitude is permitted in closing arguments, and the question is generally considered one falling in the first instance within the sound discretion of the trial court." *State v. Pustare* (1973), 33 Ohio App.2d 305, 312, 62 O.O.2d 450, 454, 295 N.E.2d 210, 214. As stated by the Ohio Supreme Court in *State v. Auerbach* (1923), 108 Ohio St. 96, 104, 140 N.E. 507, 510:

" 'The trial judge who hears the arguments of opposing counsel is in a better position than the appellate court to determine whether he should interfere because of improper remarks, it being a matter within his sound discretion, and it is only where such discretion has clearly been abused that [a reviewing court] will reverse the judgment for such cause.' "

Upon a thorough review of the parties' respective closing arguments, we are unable to conclude that the trial court clearly abused its discretion by sustaining or overruling objections during closing argument. Moreover, the trial court's actions clearly did not prevent defense counsel from presenting an effective and persuasive closing argument. Accordingly, appellant's fifth assignment of error is overruled.

Appellant's sixth and eighth assignments of error will be discussed together. In his sixth assignment of error, appellant argues that the trial court failed to fully instruct the jury on the elements of theft. Specifically, appellant claims that the trial court failed to inform the jury that the property must be taken without the consent of the owner or *a person authorized to give consent*. In his eighth assignment of error, appellant challenges the trial court's reasonable doubt instruction. Specifically, appellant contends the trial court improperly expanded upon the definition of "reasonable doubt" contained in R.C. 2901.05.

A criminal defendant is entitled to complete and accurate jury instructions on all the issues raised by the evidence. *State v. Sneed* (1992), 63 Ohio St.3d 3, 9, 584 N.E.2d 1160, 1166. When reviewing the trial court's charge, a " 'single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' " *State v. Price* (1979), 60 Ohio St.2d 136, 141, 14 O.O.3d 379, 382, 398 N.E.2d 772, 775.

The record demonstrates the appellant failed to object to the court's jury charge. It has long been the rule in Ohio that a party may not assign as error the giving or failure to give instructions, unless the party specifically states

his objections at trial. *State v. Lane* (1976), 49 Ohio St.2d 77, 3 O.O.3d 45, 358 N.E.2d 1081; Crim.R. 30(A). Thus, absent plain error pursuant to Crim.R. 52(B), the alleged errors need not be considered by this court. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364.

An erroneous jury instruction does not amount to plain error under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Long* (1978), 53 Ohio St.2d 91, 97, 7 O.O.3d 178, 181, 372 N.E.2d 804, 808. The doctrine of plain error under Crim.R. 52(B) is to be taken with the utmost caution and under exceptional circumstances. *State v. Long,* at paragraph three of the syllabus.

Upon review of the record, we are unable to conclude that the trial court's jury charge rose to the level of plain error. On page 319 of the trial transcript the court instructed the jury that the property must have been taken "without the consent of the owner or person authorized to give consent." Additionally, this court has previously held that the reasonable doubt instruction given by the trial court is permissible and does not constitute reversible or prejudicial error. *State v. Smith* (Dec. 13, 1984), Cuyahoga App. No. 48187, unreported, at 9–10, 1984 WL 6371.

Accordingly, appellant's sixth and eighth assignments of error are overruled.

Appellant's seventh and ninth assignments of error will be discussed together. Appellant maintains that his conviction for grand theft in violation of R.C. 2913.02 is against the manifest weight of the evidence.

A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132. In *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717, the court set forth the test to be utilized when addressing the issues of manifest weight of the evidence. The *Martin* court stated as follows:

" * * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * See *Tibbs v. Florida* (1982), 457 U.S. 31, 38, 42, 102 S.Ct. 2211, 2216, 2218, 72 L.Ed.2d 652, 659, 661." *Martin, supra,* 20 Ohio App.3d at 175, 20 OBR at 218, 485 N.E.2d at 720; see, also, *State v. Davis* (1988), 38 Ohio St.3d 361, 365, 528 N.E.2d 925, 929.

Moreover, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

Appellant was convicted of grand theft in violation of R.C. 2913.02, which provides in relevant part:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent[.]"

"Owner" is defined in R.C. 2913.01(D), which provides:

"(D) 'Owner' means any person, other than the actor, who is the owner of, or who has possession or control of, or any license or interest in property or services, even though such ownership, possession, control, license, or interest is unlawful." ·

In *State v. Rhodes* (1982), 2 Ohio St.3d 74, 2 OBR 629, 442 N.E.2d 1299, the Ohio Supreme Court discussed theft of a motor vehicle under R.C. 2913.02 in the following manner:

"For purposes of determining the commission of a theft offense under R.C. 2913.02, one need not hold a certificate of title to be in lawful possession of a motor vehicle. The state must prove that the defendant deprived the owner, as such term is defined in R.C. 2913.01(D), of the vehicle. This definition makes it clear that the 'ownership, possession, control, license, or interest' of the 'owner,' as that term is used in R.C. 2913.01 through 2913.71, may be unlawful in itself. It is the 'actor's,' *i.e.,* the defendant's, relationship to the property which is controlling. The important question is not whether the person from whom the property was stolen was the actual owner, but rather whether the defendant had any lawful right to possession." *Id.* at 76, 2 OBR at 631, 442 N.E.2d at 1301–1302.

In the instant case, it is abundantly clear that the appellant did not have any lawful right to possession of the motor vehicle. Moreover, it cannot be plausibly argued that the city of Cleveland, who mistakenly released the vehicle from impound to the appellant, was authorized to consent to appellant's unlawful taking and subsequent sale of the vehicle.

After reviewing the entire record, weighing the evidence and considering the credibility of the witnesses, we are not persuaded that the jury clearly lost its way and created such a manifest miscarriage of justice that appellant's conviction must be reversed. The evidence established beyond a reasonable doubt that the appellant committed grand theft of a motor vehicle when he removed the vehicle from impound and subsequently sold it. Thus, the jury's verdict is not against the manifest weight of the evidence.

Accordingly, appellant's seventh and ninth assignments of error are overruled.

In his tenth assignment of error, appellant objects to the trial court's sentence. The trial court suspended a twenty-four-month term of imprisonment and placed the appellant on three years' probation conditioned upon: (1) payment of restitution in the amount of $6,500; (2) payment of court costs; and (3) payment of a $5,000 fine or a payment of $2,500 to Crime Stoppers.

A trial court is vested with broad discretion in imposing a felony sentence, and this court will not reverse the sentence unless it is statutorily incorrect and the trial court abused its discretion by failing to consider the statutory sentencing factors. *State v. Kroner* (1988), 49 Ohio App.3d 133, 551 N.E.2d 212; *State v. Henry* (1987), 37 Ohio App.3d 3, 523 N.E.2d 877; *State v. Yontz* (1986), 33 Ohio App.3d 342, 515 N.E.2d 1012. The court presumably considers the statutory factors unless the record supports a contrary conclusion. *State v. Adams* (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361.

The appellant was convicted of grand theft of a motor vehicle, which is a felony of the third degree. The court was permitted to sentence the appellant to a term of incarceration of one, one and one-half, or two years, and impose a fine of up to $5,000. R.C. 2929.11(C)(3) and (D)(1). Thus, the trial court's sentence in the instant case was statutorily permissible. Furthermore, the appellant has not demonstrated from the record that the court abused its discretion. We thus affirm the trial court's sentence.

Appellant also argues that the trial court erred in ordering him to make restitution in the amount of $6,500 where there was no showing that the loss amounted to $6,500.

A trial court's ability to order restitution is strictly limited to the actual damage or loss caused by the defendant. *State v. Williams* (1986), 34 Ohio App.3d 33, 516 N.E.2d 1270. Further, it is an abuse of the trial court's discretion to order restitution in an amount which does not bear a "reasonable relationship" to the actual losses suffered. *Id.*

Herein, Mrs. Montes testified that she and her husband purchased the 1984 Mercedes in March 1991 for $6,500. She further testified that the vehicle was purchased from Nick Roscoe. Roscoe confirmed that he sold the vehicle for $6,000 or $6,500. Consistent with the above, we find that the restitution ordered by the trial court bore a reasonable relationship to the losses suffered.

Accordingly, appellant's tenth assignment of error is overruled.

*Judgment affirmed.*

HARPER and KRUPANSKY, JJ., concur.