JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Richard Parsons ("appellant"), appeals his conviction and sentence for forgery. For the reasons set forth below, we affirm.
 {¶ 2} On July 7, 2005, the Cuyahoga County Grand Jury indicted appellant on two counts: count one alleged forgery, in violation of R.C.2913.02 and count two alleged forgery, in violation of R.C. 2913.31. Appellant plead not guilty to both counts in the indictment.
 {¶ 3} Appellant waived a jury and the case proceeded to a bench trial on January 17, 2006. At trial, the state presented the following individuals for examination: Christa Price-Frazier, Jerry Gideon, and Detective Frank Zagami. A summary of the relevant testimony follows.
 {¶ 4} The victim, Christa Price-Frazier ("Frazier") owns a multi-family rental property at the address 10700 Drexel Avenue, Cleveland, Ohio. Frazier testified that she contacted appellant to make repairs to this home. Appellant agreed to do so and the two entered into a written contract in July of 2003 which listed the work to be performed. The two also entered into an addendum on September 4, 2003, revising the work to be performed.
 {¶ 5} Appellant also helped Frazier obtain financing to pay for the necessary repairs to her home through Security First Mortgage ("Security First"). After the application process, Security First approved Frazier for a loan against her property in the amount of $47,900. Frazier understood that Security First would loan her the money by dividing it up into two two-party checks in the amount of $23,500 each, with a third check for $900 in Frazier's name only. Both appellant and Frazier would need to sign the two checks for $23,500 in order for each to be cashed.
 {¶ 6} Frazier testified that appellant presented her with the first check for $23,500, which she signed. He then cashed the check and began working on the house a few days later.
 {¶ 7} In regards to the second check for $23,500, Frazier testified that she never saw that check, nor did she write the signature affixed on the back of the check. Frazier only discovered that the second check had been cashed when she requested money from that check. At that time, appellant told her that he had already deposited both checks. While reviewing the second check during trial, Frazier testified that it was not her signature on the back of the second check.
 {¶ 8} Finally, Frazier testified that appellant failed to complete the work he was contracted to do for her. Namely, Frazier explained, outlets were left open with wires exposed, carpeting and flooring was not installed, doors were off the hinges, drywall was unfinished and the painting was not completed. As a result, Frazier obtained contractors, painters and electricians to finish the repairs that appellant did not complete.
 {¶ 9} Jerry Gideon ("Gideon"), president of Security First, testified that Frazier, through appellant, requested Gideon's services to obtain financing to pay for the renovations agreed to in the contract between Frazier and appellant. After approving Frazier's application, the loan was processed and approved.
 {¶ 10} Generally, Gideon explained, in instances involving a contractor and a homeowner, the parties request two-party checks issued in both the homeowner's name and the contractor's name. Additionally, the amount of the loan is usually divided into two checks, each made out for half the full amount of the loan, with any remaining proceeds issued on a separate check.
 {¶ 11} Gideon testified that, in the instant matter, he received envelopes with the two two-party checks, each in the amount of $23,500 from the title company, Land America Mortgage Title ("Land America"). Generally, when he receives checks from Land America, the representative of the company has signed the checks, but neither the contractor, nor the homeowner has endorsed the check. Gideon testified that in this instance the same situation occurred. He received the checks from Land America without the endorsements of either Frazier or appellant. He then called appellant and informed him that he would need to pick up the checks and deliver them to Frazier for her endorsement. Appellant complied with Gideon's request. Finally, Gideon confirmed, that to his knowledge, both two-party checks were cashed.
 {¶ 12} Frank Zagami is a detective in the financial crimes unit of the Cleveland Police Department. He testified that Frazier came to him and complained that appellant forged her signature upon a check and deposited same. Zagami had Frazier complete a police report and he began his investigation.
 {¶ 13} During his investigation, Zagami first obtained the statements of both Frazier and appellant. Next, he contacted Land America, who sent him copies of the two checks in question because the originals were no longer available.
 {¶ 14} A review of the checks revealed that Frazier's signatures upon the two checks were quite different. After analyzing several of her signatures, he discovered that Frazier always signed the "P" in "Price-Frazier" in a large, almost floral manner. The letter "P" on the second check, however, was written differently. Zagami testified that based upon his experience and investigation, he believes appellant obtained the second check from Gideon, which was unsigned, and then "[c]aused a forged signature to be signed and that check negotiated so that he could cash that check without getting the approval of the victim." Zagami further testified that it is nearly impossible to determine the author of the forged signature because appellant could have recruited someone else to sign Frazier's name. Accordingly, Zagami stated that in his experience, it would be fruitless to attempt to prove who forged the signature. Instead, he sought to establish that appellant had in his possession "a document which he knew to be forged and then uttered that document and negotiated it."
 {¶ 15} At the close of the state's case, appellant made a Crim.R. 29 motion for acquittal. The court granted the motion as to the first count of theft but denied the motion as to the second count of forgery. Appellant then testified on his own behalf.
 {¶ 16} Appellant testified that in early September he received a telephone call from Gideon to retrieve the two $23,500 checks. Appellant claims that when he went to collect the checks, Gideon gave him an envelope with both checks inside, both of which were already endorsed by Frazier. Accordingly, appellant asserts, because both checks were already signed, he never went to Frazier to obtain her signature. Instead, he deposited the first check and a few weeks later deposited the second check.
 {¶ 17} After depositing the second check, appellant claims that he returned to work a few days later at Frazier's home. While there, unforeseen work became necessary to complete the contracted renovations. Therefore, appellant claims, he continued to work at the home until he ran out of money. Appellant testified that he was unable to complete the work.
 {¶ 18} After appellant's testimony, he rested his case and again moved for acquittal pursuant to Crim.R. 29. The trial court denied his motion.
 {¶ 19} On January 20, 2006, the trial court found appellant guilty of forgery and the matter was referred to the probation department for a presentence investigation report.
 {¶ 20} A hearing to determine the amount of restitution was held on March 7, 2006. After presentation of the evidence, the trial court ordered appellant to pay the victim restitution in the amount of the forged item, $23,500.
 {¶ 21} That same day appellant was found to be amenable to community control and received a five-year community-based correction subject to conditions including monthly payments for the $23,500 restitution order.
 {¶ 22} Appellant now appeals and asserts three assignments of error for our review. Appellant's first assignment of error states:
 {¶ 23} "The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that appellant was guilty of forgery."
 {¶ 24} "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 25} The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., following Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; see, also, State v. Thompkins, supra.
 {¶ 26} The jury convicted appellant of forgery as defined in R.C.2913.31, which reads:
 {¶ 27} "(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
 {¶ 28} "(1) Forge any writing of another without the other person's authority;
 {¶ 29} "(2) Forge any writing so that it purports to be genuine when it actually is spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with terms different from what in fact was the case, or to be a copy of an original when no such original existed;
 {¶ 30} "(3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged."
 {¶ 31} R.C. 2913.01(H) defines "utter" as "to issue, publish, transfer, use, put or send into circulation, deliver, or display."
 {¶ 32} Within this assignment of error, appellant argues that the state failed to present sufficient evidence to support his conviction for forgery because the state is unable to prove he signed Frazier's signature to the second check. Contrary to appellant's assertion, however, the state need not prove appellant signed Frazier's name. Instead, R.C. 2913.31 only requires the state to prove that appellant knowingly facilitated the fraud of uttering a check that he knew to be forged.
 {¶ 33} Viewing the evidence presented in a light most favorable to the state, the trial court reasonably inferred from the evidence that appellant uttered the check which he knew was forged. Frazier testified that she never signed the second check for $23,500, the check in question, and that the signature upon it was not hers. Additionally, Gideon testified that when he presented the check to appellant, Frazier had not signed the check. Finally, Detective Zagami concluded that, as a result of his investigation and his experience, appellant had the unsigned check in question, needed the money, and then "[c]aused a forged signature to be signed and that check negotiated so that he could cash that check without getting the approval of the victim." The only evidence appellant presented was his own testimony that when he received the two checks from Gideon both were signed by Frazier. Both Frazier and Gideon testified that Frazier's signature was not upon the checks when they were given to appellant. In light of the foregoing evidence, we find that sufficient evidence existed to support appellant's conviction for forgery. Appellant's first assignment of error is without merit.
 {¶ 34} Appellant's second assignment of error states:
 {¶ 35} "Appellant's conviction for uttering was against the manifest weight of the evidence."
 {¶ 36} In State v. Thompkins, 78 Ohio St.3d 380, 388, 1997-Ohio-52,678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 37} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Black's [Law Dictionary (6 Ed. 1990)], at 1594."
 {¶ 38} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citingTibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211,72 L.Ed.2d 652. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. SeeState v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 39} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 40} In this matter we cannot conclude that the jury lost its way. Appellant argues that his version of events, namely that when he received the checks from Gideon they were already signed by Frazier, is just as credible as the version of events testified to by Frazier, Gideon and Detective Zagami; that appellant received the checks unsigned, went to Frazier to have the first one signed but had someone else forge Frazier's signature on the second check without Frazier's knowledge, and then cashed the second check and retained the money. We agree with the trial court that the greater amount of credible evidence is that provided by Frazier, Gideon and Detective Zagami. Appellant had someone forge the check and then cashed it knowing of the forgery. Therefore, after reviewing the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we find that the verdict is not against the weight of the evidence. Accordingly, appellant's first assignment of error is without merit.
 {¶ 41} Appellant's third assignment of error states:
 {¶ 42} "The trial court erred in ordering restitution in an amount not established to a reasonable degree of certainty."
 {¶ 43} In the instant matter, appellant was convicted of forging a check in the amount of $23,500. The trial court ordered appellant pay restitution in the amount of the check. Appellant argues that the trial court erred in ordering restitution in an amount not established to a reasonable degree of certainty. For the following reasons, we disagree.
 {¶ 44} R.C. 2929.18(A)(1) grants a trial court authority to order restitution by an offender to a victim in an amount commensurate with the victim's economic loss. A trial court may determine the amount of restitution by reviewing the record, or if the evidence in the record is insufficient, the court must conduct an evidentiary hearing. State v.Montes (1993), 92 Ohio App.3d 539, 636 N.E.2d 378 (where victim testified to value of stolen vehicle during trial); State v.Brumback (1996), 109 Ohio App.3d 65, 83, 671 N.E.2d 1064.
 {¶ 45} The amount of restitution must be established to a reasonable degree of certainty through competent, credible evidence. State v.Warner (1990), 55 Ohio St.3d 31, 69, 564 N.E.2d 18; State v.Williams (1986), 34 Ohio App.3d 33, 516 N.E.2d 1270, paragraph two of syllabus. "A trial court abuses its discretion in ordering restitution in an amount which has not been determined to bear a reasonable relationship to the actual loss suffered." Williams, supra.
 {¶ 46} First, appellant seems to contend that the trial court, during the restitution hearing, erred in considering the victim's testimony proffered at trial because the victim was absent during the hearing. As previously stated, the trial court can rely on evidence in the record in order to render its decision in regards to the amount of restitution.Montes, supra.
 {¶ 47} Next appellant argues that the amount of restitution ordered by the court did not bear relation to the actual amount of loss suffered by the victim because the victim benefitted from work performed by appellant and such work was not considered in the amount of restitution. We disagree.
 {¶ 48} Appellant was convicted of forgery of the second check. The second check totaled $23,500. A forged check with the amount received printed on the front is competent and credible evidence to establish the amount of economic loss suffered by the victim of the forged check. SeeState v. Williams, Logan App. No. 8-03-25, 2004-Ohio-2801. There can be no dispute that by forging the check, appellant deprived the victim of her leverage and ability to control the negotiation of the $23,500 check as the trial court concluded. Thus, the trial court was authorized to order restitution in the amount of $23,500.
 {¶ 49} Furthermore, appellant argues that he made repairs that should reduce the amount of restitution awarded to the victim as a result of his forgery conviction. While appellant's argument would be practical if he was convicted of theft, his argument is inapplicable with a conviction of forgery. Had appellant been convicted of theft, the amount of work performed would have bearing on the amount of restitution because the more repairs made, the less the amount of the theft. Appellant, however, was not convicted of theft, but instead was convicted of forgery. Whether appellant completed the renovations bears no correlation to the fact that he cashed a check he knew to be forged in the amount of $23,500. Accordingly, we agree with the trial court and affirm its order that appellant be required to pay restitution in the amount of $23,500.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J., and KENNETH A. ROCCO, J., CONCUR