OPINION *Page 2 
{¶ 1} This is an appeal from a re-sentencing upon remand whereby the trial court's re-sentencing included the imposition of a jail term rather than a less restrictive imposition of community control which had originally been imposed.
 STATEMENT OF FACTS AND LAW {¶ 2} On September 17, 2004, appellant was indicted for one count of receiving stolen property (i.e. firearms), in violation of R.C.2913.51(A) a fourth degree felony. On October 7, 2005, after a jury trial appellant was found guilty as charged. Sentencing was deferred for a pre-sentence investigation. On October 31, 2005, appellant was sentenced to serve five years of community control, pay a $5,000.00 fine and make restitution in the amount of $1,000.00. The trial court further held that a violation of community control would lead to the more restrictive sanction of an eighteen (18) month prison term. On November 29, 2005, appellant filed a timely appeal of his conviction and sentence.
 {¶ 3} On December 27, 2005, appellant was charged with a probation violation. Specifically appellant was alleged to have violated the conditions of his probation/community control for failure to complete four hundred hours of community service. On March 1, 2006, the trial court found that appellant was not guilty of the violation. The court then modified the conditions of release to include the following: a stricter curfew, a condition that appellant could no longer engage in the sale or purchase of used merchandise with the exception of used cars, and (due to appellant's chronic health conditions, i.e. a bad back), the removal of the four (400) hundred hour community service requirement. *Page 3 
 {¶ 4} On August 16, 2006, in State v Lacey, Richland County App. No. 2005-CA-119, 2006-Ohio-4290, this Court held that, based upon the verdict form signed by the jurors, the jury only found appellant guilty of a first degree misdemeanor offense of receiving stolen property. This Court in pertinent part, vacated appellant's sentence, community control sanction and restitution order and remanded the matter for further proceedings in accordance with the opinion and law. This court's remand for re-sentencing in essence vacated the first sentencing. See,State v. Bolton (2001), 143 Ohio App.3d 185, 188-189, 757 N.E.2d 841.
 {¶ 5} Thereafter, appellant filed an affidavit in the Ohio Supreme Court seeking the disqualification of the trial judge on re-sentencing, arguing that the court had shown bias against the defendant. On October 3, 2006, the Supreme Court denied the application for disqualification.
 {¶ 6} On November 21, 2006, appellant appeared before the trial court for a re-sentencing and restitution hearing. At the hearing, the State presented the testimony of the victim, Larry Oswalt, on the matter of restitution. Mr. Oswalt testified that in 2004, there were sixteen (16) firearms, including long guns, rifles and handguns stolen from his home. With the help of appellant, the firearms were recovered within approximately three or four days of the theft. The firearms were then held as evidence by the sheriffs department and prosecutor pending trial. The firearms remained in evidence for approximately one and one-half years. While the firearms were in the Sheriffs custody, the firearms sustained extensive damage including rusting and pitting to both the inside and outside of the barrels. The reasonable estimated cost of repairs was $3,000.00. *Page 4 
 {¶ 7} After Mr. Oswalt's testimony, the trial court proceeded to impose an order of restitution and sentencing. With regard to the restitution, the trial court stated, "It is clearly the case that burglaries are not committed except that the burglars intended to economically profit by their thefts. They are not collectors in general. They generally are people, who are stealing things they can sell for value, and therefore the fence is an integral part of those sorts of criminal conduct, and that is clearly the case here. Mr. Lacey is convicted by a jury of receiving stolen property for those sixteen guns." Furthermore, "it is entirely appropriate for the prosecutor, while a case is pending, to keep those pieces of evidence in State custody * * *" "Therefore I think Mr. Lacey does share responsibility for the entire damage in this case, and that he was part and parcel of the criminal conduct that resulted in the damage to Mr. Oswalt's guns." The trial court then ordered appellant to pay restitution in the amount of Three-Thousand ($3,000.00) Dollars.
 {¶ 8} With regard to sentencing, the court reiterated that appellant purchased the guns from the burglars for the amount of three hundred and fifty ($350.00) and then within hours resold the guns for the price of eleven thousand ($11,000.00) dollars. The court also stated that at trial appellant bragged about buying property for ten percent of the street value, and that it "sounds like a prescription for dealing with thieves and drug addicts, people who are desperate to sell their property and who are not particularly concerned about its real value."
 {¶ 9} The trial court also heard testimony that appellant was essentially involved in a used car business. As a part of the home business he had hired a convicted felon to help with work on the cars. Appellant denied any knowledge of the "employee's" *Page 5 
criminal history. Furthermore, during the probation violation hearing, after the original conviction and sentence, the trial court heard testimony that appellant could not perform any community service work and had received several doctor's releases for back problems. Finally, the trial court opined that appellant did and continues to lack remorse for his criminal actions or empathy for the victim.
 {¶ 10} In conclusion, the trial court stated, "I am persuaded, * * * that you cannot work, you cannot do community service, you can't really do probation in any way, but you can do time." The trial court then proceeded to impose the following sentence: the imposition of a one thousand ($1,000.00) fine, and a one hundred and eighty (180) day sentence to be served at the Richland County Jail. The court then suspended thirty days of the sentence, ordered appellant be placed on probation upon release, and granted appellant time for twenty-three days served. The re-sentencing was journalized on November 22, 2006. It is from this re-sentencing and restitution order that appellant now seeks to appeal, setting forth the following assignments of error:
 {¶ 11} "I. THE TRIAL COURT ERRED BY INCREASING APPELLANT'S SENTENCE SIX-[F]OLD (SIC) FOLLOWING REMAND FROM ORIGINAL APPEAL.
 {¶ 12} "II. THE TRIAL COURT ERRED WHEN ORDERING APPELLANT TO PAY RESTITUTION.
 {¶ 13} "III. THE COURT ERRED IN ORDERING, AS A CONDITION OF APPELLANT'S COMMUNITY CONTROL, HE NOT ENGAGE IN THE PURCHASE OR SALE OF USED PROPERTY "EXCEPT FOR HIS OWN REASONABLE PERSONAL USE AFTER OBTAINING HIS PROBATION OFFICER'S APPROVAL." *Page 6 
 I {¶ 14} In appellant's first assignment of error he argues that the trial court acted with vindictiveness against the appellant upon re-sentencing for having successfully attacked his first conviction. We disagree.
 {¶ 15} While a court may employ various criteria in assessing an appropriate sentence in a given case, it cannot punish a defendant for pursuing a successful appeal. Alabama v. Smith (1989), 490 U.S. 794,798, 109 S.Ct. 2201, 104 L.Ed.2d 865. "A trial court violates the Due Process Clause of the Fourteenth Amendment when it re-sentences a defendant to a harsher sentence when motivated by vindictive retaliation." North Carolina v. Pearce (1969), 395 U.S. 711, 724,89 S.Ct. 2072, 23 L.Ed.2d 656.
 {¶ 16} In North Carolina v. Pearce, the United States Supreme Court held that there was a presumption of vindictiveness when a harsher sentence was imposed on re-sentencing, following a successful appeal. However, the Court also held that a trial judge is not constitutionally precluded, from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's `life, health, habits, conduct, and mental and moral propensities."' Id. at 723. The Court stated that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing." Id. at 725-726; See also, Simpson v. Rice (1986), 395 U.S. 711, 89 S.Ct. 2072,23 L.Ed.2d 656, decided with North Carolina v. Pearce, Supra. *Page 7 
 {¶ 17} In Wasman v. United States (1984), 468 U.S. 559,104 S.Ct. 3217, 82 L.Ed.2d 424, the Supreme Court clarified its North Carolina v.Pearce holding by making it "clear * * * that due process does not in any sense forbid enhanced sentences or charges, but only enhancement motivated by actual vindictiveness toward the defendant for having exercised guaranteed rights." Id. at 568 (emphasis sic). The Supreme Court reiterated that "a sentencing authority may justify an increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings." Id. at 572. The Supreme Court stated that the fact that Wasman received a greater sentence following retrial was sufficient to engage the presumption of vindictiveness of Pearce. However, the court found that the reasons given by the trial court for imposing the greater sentence, that is, Wasman's new criminal conviction between his initial sentence and his re-sentencing, "amply rebut[ted] any presumption of vindictiveness." Id. at 569-570.
 {¶ 18} The Supreme Court addressed the presumption of judicial vindictiveness again in Texas v. McCullough (1986), 475 U.S. 134,106 S.Ct. 976, 89 L.Ed.2d 104: "Beyond doubt, vindictiveness of a sentencing judge is the evil the Court sought to prevent rather than simply enlarged sentences after a new trial." Id. at 138. With regard to new information, the court stated that "[n]othing in the Constitution requires a judge to ignore `objective information justifying the increased sentence.'" Id. at 142. The court "recognized the state's legitimate interest `in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal laws.'" Id. at 144 citing, Rummel v. Estelle (1980), 445 U.S. 263, 276,100 S.Ct. 1133, 1140, 63 L.Ed. 2d 382. The court *Page 8 
held that the 50-year sentence imposed upon McCullough for murder by the trial judge after retrial was not the result of vindictiveness even though the jury at the first trial had imposed a sentence of only 20 years. In increasing the sentence, the trial judge relied on new evidence that was not presented at the first trial, including the fact that McCullough had been released from prison only four months before committing murder.
 {¶ 19} In Alabama v. Smith, the United States Supreme Court further clarified North Carolina v. Pearce and held that a presumption of vindictiveness only arises when an accused has received an "unexplained increase in sentence" after retrial following a successful appeal, and the record establishes a reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness.Alabama v. Smith, Supra at paragraph one of the syllabus.
 {¶ 20} In Alabama v. Smith a harsher sentence was imposed by the trial court after a successful appeal of a guilty plea, a remand and re-trial. Specifically, the Court found that "the relevant sentencing information available to the judge after a guilty plea will usually be considerably less than available after a trial, and where leniency that may have been shown in response to a guilty plea is no longer appropriate, there are enough justifications for a heavier sentence that it cannot be said to be more likely than not that the judge who imposes such a sentence is motivated by vindictiveness." Alabama v. Smith, 490 U.S. at 794-795.
 {¶ 21} In this case the trial court originally sentenced appellant to one hundred and eighty (180) days of incarceration but suspended the sentence and placed *Page 9 
appellant on five years of community control sanctions. While appellant was on community control he was unable to complete any community service hours due to health conditions (i.e. bad back). Appellant also engaged in a used car business and hired a convicted felon to help with the cars.
 {¶ 22} There is a difference between vindictiveness and punishment. In this case, the trial court stated that appellant did not show any remorse for his actions or empathy for the victim. Furthermore, after receiving the original sentence, the evidence established that the appellant was unable to complete any community service and appellant had shown a propensity for bad judgment by hiring a convicted felon to work in appellant's used car business. Based upon this information, the trial court came to the conclusion that the only available punishment was incarceration. We find that these facts do not show a reasonable likelihood of vindictiveness in the sense that the trial court sought revenge in a vindictive manner, nor has appellant proven the sentence was motivated by vindictiveness. Rather we find that the trial court's findings constituted "objective information justifying the increased sentence", and a desire to punish the appellant for his criminal behavior. (Quoting in part, Texas v. McCollough, supra, citing UnitedStates v. Goodwin (1982), 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74).
 {¶ 23} Accordingly we hereby overrule appellant's first assignment of error.
 II {¶ 24} In the second assignment of error, appellant argues that the trial court abused its discretion in ordering restitution for the victim's firearms which included restitution for the damages to the firearms while they were in the custody of the state pending trial. Specifically, appellant argues that it was the intervening and superceding *Page 10 
negligence of the sheriff and prosecutor that proximately caused the damages to the 15 firearms that remained in their custody. Therefore, appellant argues, he should not be ordered to pay restitution for the damages. We disagree.
 {¶ 25} R.C. 2929.18(A)(1) grants a trial court authority to order restitution by an offender to a victim in an amount commensurate with the victim's economic loss. "A sentence of restitution must be limited to the actual economic loss caused by the illegal conduct for which the defendant was convicted." State v. Banks, Montgomery County App. No. 20711, 2005-Ohio-4488, at paragraph five. A trial court abuses its discretion when it orders restitution in an amount, which has not been determined to bear a reasonable relationship to the actual loss suffered as a result of the offense for which the defendant was convicted.State v. Williams (1986), 34 Ohio App.3d 33, 34, 516 N.E.2d 1270.
 {¶ 26} A trial court may determine the amount of restitution by reviewing the record, or if the evidence in the record is insufficient, the court must conduct an evidentiary hearing. See, e.g., State v.Montes (1993), 92 Ohio App.3d 539, 636 N.E.2d 378, (victim testified as to value of stolen vehicle during trial); See also, State v.Brumback (1996), 109 Ohio App.3d 65, 83, 671 N.E.2d 1064. Furthermore, the amount of restitution must be established to a reasonable degree of certainty through competent, credible evidence. State v. Williams
(1986), 34 Ohio App.3d 33, 34, 516 N.E.2d 1270.
 {¶ 27} This Court reviews the trial court's award of restitution under an abuse of discretion standard. State v. Myers, 9th Dist. No. 06CA0003,2006-Ohio-5958, at paragraph twelve. Under this standard, a trial court abuses its discretion by "ordering *Page 11 
restitution in an amount which had not been determined to bear a reasonable relationship to the actual losses suffered."Williams, 34 Ohio App.3d at 35.
 {¶ 28} Appellant argues that he is not liable for the restitution because his actions were superceded by the negligent storage of the firearms and/or the prosecutor's failure to release the firearms. The question then becomes whether these intervening acts so overcome the defendant's initial criminal behavior that the appellant's liability is superceded.
 {¶ 29} "An intervening cause is one which comes into active operation in producing the result after the negligence of the defendant."Prosser, Law of Torts (4 Ed.1971), at 271. Therefore, in order to excuse the defendant, an intervening cause must be either a superseding or responsible cause. It is a superseding cause, when it so entirely supersedes the operation of the defendant's criminal conduct that it alone, without the criminal conduct contributing thereto in the slightest degree, produces the damage. See, 39 Ohio Jurisprudence 2d 543, Negligence, Section 38."
 {¶ 30} Furthermore, whether an intervening act breaks the causal connection between the criminal conduct or negligence and injury sustained, depends upon whether the intervening cause was reasonably foreseeable by the one who was guilty of the criminal conduct or negligence. See R.H. Mary Co., Inc. v. Otis Elevator Co. (1990),51 Ohio St.3d 108, 554 N.E.2d 1313; Morher v. Giulane (2006)167 Ohio App.3d 785, 2006-Ohio-2943, 857 N.E.2d 602. Therefore, we conclude that, where a person engages in criminal behavior and that behavior is followed by the negligence of a third person which directly results in damages, the defendant's earlier criminal conduct may be found to be the proximate cause of the damages if the intervening act *Page 12 
could have been reasonably foreseen. Only intervening acts which are not reasonably foreseeable can negate liability.
 {¶ 31} In this case, it was the plaintiffs actions of receiving the stolen property and selling it for a substantial financial gain, which led to the firearms being held as evidence. It is reasonably foreseeable and general practice that evidence is held pending trial. Furthermore, once property is illegally removed from the custody of its owner it is reasonably foreseeable that the property may suffer damage.
 {¶ 32} For these reasons, we find that the restitution for damages was reasonably related to appellant's criminal activity. Accordingly, we hereby overrule appellant's second assignment of error.
 III {¶ 33} In the third assignment of error, appellant argues that the condition of community control, after his release, ordering that he not engage in the purchase or sale of used property, "except for his own reasonable personal use after obtaining his probation officer's approval", is overbroad and unreasonable. We disagree.
 {¶ 34} As previously stated in State v. Lacey, Richland County App. No. 2005-CA-119, in examining the reasonableness of conditions imposed as part of a defendant's probation for a felony violation, the Ohio Supreme Court noted in State v. Jones (1990), 49 Ohio St.3d 51, 52-53,550 N.E.2d 469, that the trial court's discretion is not "limitless" and explained: "In determining whether a condition of probation is related to the `interests of doing justice, rehabilitating the offender, and insuring his good behavior,' courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender *Page 13 
was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." (Citations omitted.) The Ohio Supreme Court recently recognized that the same rationale applies to the imposition of community control sanctions. In State v. Talty, 103 Ohio St.3d 177,2004-Ohio-488, 814 N.E.2d 1201.
 {¶ 35} We further held that, in the previous conditions of community control, with respect to the condition that appellant "not engage in the purchase or sale of used property", "there is little doubt that the condition is reasonably related to rehabilitating the offender and relates to conduct regarding future criminality. However, we find the prohibition to be overbroad because it does not provide a mechanism by which the prohibition can be lifted if the relevant conduct should involve a legitimate purchase. In other words under the prohibition imposed by the trial court, the appellant could not purchase a used car, used clothing or other necessities."
 {¶ 36} "Although we do not determine whether a mechanism that allowed the prohibition to be lifted or supervised by the probation department would have rendered the condition valid under Jones, such a mechanism would have been, at the very least, an easy alternative that would have better accommodated appellant's ability to obtain used property for a legitimate purpose at de minimis costs to the legitimate community control interests of rehabilitation and avoiding future criminality.Talty, supra at 182, 814 N.E.2d 1201, 2004-Ohio-488 ¶ 21,814 N.E.2d 1205."
 {¶ 37} Upon re-sentencing, the trial court ordered that appellant could not buy or sell used property with the exception of property for reasonable personal use after obtaining approval from the probation officer of the purchase or sale. In the *Page 14 
resentencing, the trial court provided a mechanism by which the prohibition can be lifted if the relevant conduct should involve a legitimate purpose and the probation officer approves of the purchase or sale.
 {¶ 38} We find that the new conditions of community control on re-sentencing, regarding the purchase or sale of used property are reasonably related to appellant's criminal conduct. We also find that the conditions of community control are not vague or overbroad. Accordingly appellant's third assignment of error is overruled.
 {¶ 39} The sentence of the Richland County Court of Common Pleas is hereby affirmed.
 Edwards, J. Hoffman, P.J. and Farmer, J., concur *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1